# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
September 14, 2023
Lyle W. Cayce
Clerk

No. 22-30686

Damon Landor,

>*Plaintiff—Appellant*,

*versus*

Louisiana Department of Corrections and Public Safety; James M. LeBlanc, *in his official capacity as Secretary thereof, and individually*; Raymond Laborde Correctional Center; Marcus Myers, *in his official capacity as Warden thereof, and individually*; John Does 1-10; ABC Entities 1-10,

>*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-733

_____

Before Clement, Graves, and Higginson, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

The question presented is whether the Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides for money damages against officials sued in their individual capacities. Because we've already answered that question in the negative, we AFFIRM.

No. 22-30686

# I.

Damon Landor is a devout Rastafarian who vowed to "let the locks of the hair of his head grow," a promise known as the Nazarite Vow. *See Numbers* 6:5.[1] Landor kept that promise—for almost two decades, he didn't cut his hair. But that changed when he arrived at the Raymond Laborde Correctional Center.

Stepping back, Landor was incarcerated in 2020. During his brief stint in prison, Landor was primarily housed at two facilities, St. Tammany Parish Detention Center and LaSalle Correctional Center. Both stays were relatively uneventful—each facility respected Landor's vow and allowed him to either wear his hair long or to keep it under a "rastacap." LaSalle even went as far as to *voluntarily* amend its grooming policy to allow Landor to keep his dreads. Then, after five peaceful months—and with only three weeks left in his sentence—Landor was transferred to RLCC.

Upon arrival, Landor was met by an intake guard. Acting preemptively, Landor explained that he was a practicing Rastafarian and provided proof of past religious accommodations. And, amazingly, Landor also handed the guard a copy of our decision in *Ware v. Louisiana Department of Corrections*, 866 F.3d 263 (5th Cir. 2017), which held that Louisiana's policy of cutting the hair of Rastafarians violated RLUIPA. Unmoved by our caselaw, the guard threw Landor's papers in the trash and summoned RLCC's warden, Marcus Myers. When Myers arrived, he demanded Landor hand over documentation from his sentencing judge that corroborated his religious beliefs. When Landor couldn't instantly meet that demand, two

---

[1] Because this arrives on appeal from a granted motion to dismiss, the facts in the complaint are taken as true. *See White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).

guards carried him into another room, handcuffed him to a chair, held him down, and shaved his head.

After he served his time, Landor sued the Louisiana Department of Corrections, the prison, Myers, and the Department's Secretary, James LeBlanc, in their individual and official capacities. Landor brought claims under RLUIPA and § 1983 for violations of his First, Eighth, and Fourteenth Amendment rights. He also pleaded state law claims for negligence, intentional infliction of emotional distress, and violations of the Louisiana constitution. Below, the defendants moved to dismiss. As is relevant here, Myers and LeBlanc argued that Landor's RLUIPA claims against them in their individual capacities are barred under our precedent. The district court agreed and held that those claims were "moot as [RLUIPA] 'does not authorize a private cause of action for compensatory or punitive damages.'" Landor appeals.

## II.

We review a district court's dismissal for failure to state a claim *de novo*. *Thurman v. Med. Trans. Mgmt., Inc.*, 982 F.3d 953, 955 (5th Cir. 2020). To survive a motion to dismiss, a complaint "must contain sufficient factual matter [] to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted). In reviewing a complaint, we "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Thurman*, 982 F.3d at 955 (quotations and citation omitted).

On appeal, Landor maintains that RLUIPA allows litigants to recover money damages against officials in their individual capacities.[2] That

---

[2] The defendants argue that Landor forfeited this argument by filing nothing below beyond his complaint. While we agree that not pressing an argument before the district

argument, however, runs squarely into one of our decisions, *Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009), *aff'd*, 563 U.S. 277 (2011) [hereinafter *Sossamon I* and *Sossamon II*, respectively]. In *Sossamon I*, we plainly held that RLUIPA does not permit suits against officers in their individual capacities, which, in turn, means claimants cannot recover monetary damages. *Sossamon I*, 560 F.3d at 329. That decision ends this case. Landor, however, advances two arguments in response: (1) a recent Supreme Court decision abrogated *Sossamon I*, and (2) alternatively, our reasoning in *Sossaman I* was flawed. We take those in turn.

### A.

First, abrogation. To overcome our decision in *Sossamon I*, Landor points us to *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020). There, the Supreme Court concluded that—under the Religious Freedom Restoration Act ("RFRA")—litigants can "obtain money damages against federal officials in their individual capacities." *Id.* at 493. But that's not enough for abrogation.

Generally speaking, "for a Supreme Court decision to change our Circuit's law, it must be more than merely illuminating with respect to the case before the court"—it "must unequivocally overrule prior precedent." *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) (cleaned up). That requires more than merely a "flawed"

---

court often means it is forfeited, we generally conclude otherwise when the issue "fairly appears in the record as having been raised *or decided*." *Lampton v. Diaz*, 639 F.3d 223, 227 n.14 (5th Cir. 2011) (emphasis added) (quotations and citation omitted); *see also Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 276 n.1 (5th Cir. 1990) (per curiam) ("The arguments we are considering, however, were those made by the district court in dismissing the complaint. . . . [T]here is no rule which forbids [the appellant] from urging that the grounds given by the district court for dismissing her complaint are wrong."). The defendants below insisted—and the district court agreed—that RLUIPA did not allow a suit against officials in their individual capacities for money damages. Consequently, Landor is now free to argue to the contrary, and we may hear him out.

"interpretation of the law" by a past panel. *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (quotations and citation omitted). Still, it is not necessary that the Court "explicitly overrule the circuit precedent at issue, or specifically address the precise question of law at issue." *In re Bonvillian Marine Service, Inc.*, 19 F.4th 787, 792 (5th Cir. 2021). Instead, the key focus is whether "a former panel's decision has fallen unequivocally out of step with some intervening change in the law." *Id.* That includes, for example, decisions that have been "implicitly overruled [by] a subsequent Supreme Court opinion establish[ing] a rule of law inconsistent with that precedent." *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) (quotations and citation omitted).

Consider *Sossamon I*. In that case, an inmate sued under RLUIPA to recover compensatory and punitive damages from several prison officials in their individual capacities. *Sossamon I*, 560 F.3d at 321, 322 & n.2. On appeal, however, we held that "an action under RLUIPA does not exist for individual-capacity claims . . . ." *Id.* at 329. We found that although RLUIPA seems to contemplate "action[s] against defendants in their individual capacities," including money damages, doctrine dictated otherwise. *Id.* at 327 & n.26. Sure, RLUIPA's language—"any other person acting under color of state law"—"mirrors the 'under color of' language in § 1983, which . . . creates an individual-capacity cause of action for damage." *Id.* at 328 (quoting 42 U.S.C. § 2000cc-5). But RLUIPA has other considerations at play. Unlike § 1983 or its sister statute, RFRA, RLUIPA was "enacted pursuant to Congress's Spending Clause power, not pursuant to the Section 5 power of the Fourteenth Amendment." *Id.* Spending Clause legislation "operates like a contract," so "only the grant recipient—the state—may be liable for its violation." *Id.* In other words, Spending Clause legislation does not "impose *direct* liability on a non-party to the contract between the state and the federal government." *Id.* at 329. So, "as a matter of statutory

interpretation and to avoid the constitutional concerns that an alternative reading would entail," we held that RLUIPA did not permit suits against defendants in their individual capacities. *Id.*[3]

But Landor insists that we've been freed from *Sossamon I*'s shackles by the Supreme Court's decision in *Tanzin*, 141 S. Ct. 486. In *Tanzin*, the Court held that RFRA authorizes money damages against officials sued in their individual capacities. *Id.* at 493. Starting with the text, the Court emphasized that RFRA says a plaintiff can sue "official[s] (or other person[s] acting under color of law)" broadly. *Id.* at 490 (quoting 42 U.S.C. § 2000bb-2(1)). Although that is not typically what a suit against the "government" means, the Court concluded that RFRA simply expanded the horizon to include officials. *Id.* Such a conclusion was apparent from context, too. RFRA employs almost the same language—"person[s] acting under color of law"—as § 1983, the latter of which the Court had "long interpreted . . . to permit suits against officials in their individual capacities." *Id.* (citation omitted). Because "RFRA uses the same terminology as § 1983 in the very same field of civil rights law, it is reasonable to believe that the terminology bears a consistent meaning." *Id.* at 490–91 (quotations and citation omitted). So, like under § 1983, the Supreme Court found that plaintiffs can proceed against officials in their individual capacities under RFRA.

What, then, is the proper remedy for litigants seeking to recover against officials in their individual capacities? Money, for one. *Id.* at 493. Generally, the Court read "appropriate relief" as "'open-ended' on its face," meaning "what relief is 'appropriate' is 'inherently context

---

[3] The court also held that even if RLUIPA created a cause of action for damages against officials in their *official* capacities, such suits were nevertheless barred by a state's sovereign immunity. *Sossamon I*, 560 F.3d at 329–31. It is this conclusion that the Supreme Court affirmed. *See generally Sossamon II*, 563 U.S. 277.

dependent.'" *Id.* at 491 (quoting *Sossamon II*, 563 U.S. at 286). And, in the context of suits against government officials in their individual capacities, the Court had long blessed monetary damages as appropriate. *Id.* That was doubly true for RFRA given that it was passed to "reinstat[e]" the Court's prior, more robust protections for the "First Amendment *and* the right to vindicate those protections by a claim." *Id.* As § 1983 had always permitted damages "for clearly established violations of the First Amendment," "parties suing under RFRA must have at least the same avenues for relief against officials that they would have had" in the past. *Id.* at 492. That, of course, includes money.[4]

We held that RLUIPA does not permit suits for money damages against officers in their individual capacities. The Supreme Court then held that RFRA does. So, does the latter holding abrogate our former one? We find that it does not. Reaching that decision is straightforward enough because, after all, *Sossamon I* and *Tanzin* involve *different laws*. That alone is not necessarily dispositive—"[s]ometimes a Supreme Court decision involving one statute implicitly overrules our precedent involving another statute," and "[s]ometimes it does not." *Gahagan*, 911 F.3d at 302–03 (collecting cases). But the point is made when we look to "the similarity of the issues decided." *Id.* at 303. And, *Tanzin* doesn't address, directly or indirectly, our decision in *Sossamon I*. Instead, it tackled the existence of individual damages under RFRA. 141 S. Ct. at 490. Referring to RLUIPA

---

[4] Not to mention, for some violations of RFRA, damages are not just "appropriate," but the "*only* form of relief that can remedy" the harm. *Tanzin*, 141 S. Ct. at 492. For some injuries—like the inability to use plane tickets or the destruction of religious property—an injunction does not, and cannot, right the wrong. *Id.* (citing examples). Since RFRA permits "appropriate relief," "it would be odd to construe [it] in a manner that prevents courts from awarding such relief" (especially since, noted the Court, Congress *had* restricted remedies to those in equity elsewhere). *Id.* (citing 29 U.S.C. §1132(a)(3), 42 U.S.C. § 2000e-5(g)(1), and 15 U.S.C. § 78u(d)(5)).

only as a "related statute," the unanimous Court didn't extend the holding in *Tanzin*, much less its logic, to RLUIPA. The Court's sole mention of RLUIPA differentiates the case from a prior one, *Sossamon II*. *Id.* at 492–93. That relative silence makes sense, though: RLUIPA and RFRA rely on different Congressional powers. *See Holt v. Hobbs*, 574 U.S. 352, 357 (2015) (noting RFRA's basis in the Fourteenth Amendment and RLUIPA's in the Spending and Commerce Clauses).

That distinction wasn't lost on other circuits.[5] For example, in *Mack v. Warden Loretto FCI*, the Third Circuit grappled with this distinction, too. 839 F.3d 286, 303 (3d Cir. 2016). In recognizing individual damages under RFRA, the court distinguished its prior prohibition on such a remedy under

---

[5] Most other circuits' reasoning tracks ours in *Sossamon I* (*i.e.*, that because RLUIPA is Spending Clause legislation, non-recipients of funds cannot be liable). *See, e.g.*, *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities because the legislation was enacted pursuant to Congress' spending power . . . which allows the imposition of conditions . . . only on those parties actually receiving the state funds."); *Sharp v. Johnson*, 669 F.3d 144, 154–55 (3d Cir. 2012) ("Pennsylvania, not Defendants, was the direct recipient of any federal funds. Thus, RLUIPA cannot impose direct liability on Defendants, who were not parties to the contract created between Pennsylvania and the federal government."); *Nelson v. Miller*, 570 F.3d 868, 887–89 (7th Cir. 2009) (same); *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) ("The statute does not authorize suits against a person in anything other than an official or governmental capacity, for it is only in that capacity that the funds are received."); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) (agreeing with *Sossamon I*); *Smith v. Allen*, 502 F.3d 1255, 1269–76 (11th Cir. 2007) (same). A couple of the other circuits advance a slightly different, but still related, line of reasoning. *Rendelman v. Rouse*, 569 F.3d 182, 187–89 (4th Cir. 2009), declined to answer whether Spending Clause legislation can impose liability on non-recipients, holding instead that either way, RLUIPA did not provide clear notice that it was doing so. *Haight v. Thompson*, 763 F.3d 554, 567–70 (6th Cir. 2014), also held that RLUIPA did not clearly impose any such liability as a condition of accepting funds, but explicitly denounced the third-party liability rational as "prov[ing] too much."

RLUIPA. *Id.* The court, in other words, was "unmoved . . . by the similarities in the text of RFRA and its sister statute, RLUIPA." *Id.*

> Although the judicial relief provision in RLUIPA mirrors that in RFRA, RLUIPA was enacted pursuant to Congress's powers under the Spending Clause, thereby allowing Congress to impose certain conditions, such as civil liability, on the recipients of federal funds, such as state prison institutions. Because state officials are not direct recipients of the federal funds, and thus would have no notice of the conditions imposed on them, they cannot be held individually liable under RLUIPA. RFRA, by contrast, was enacted pursuant to Congress's powers under the [Fourteenth Amendment] and thus *does not implicate the same concerns*.

*Id.* at 303–04 (emphasis added).

In response, Landor insists that because RLUIPA's and RFRA's texts are almost the same, we should read RLUIPA the same way the Supreme Court read RFRA. After all, the two laws are often treated similarly. *See e.g., Burwell v. Hobby Lobby*, 573 U.S. 682, 696 n.5 (2014). But "[i]n law as in life, . . . the same words, placed in different contexts, sometimes mean different things." *Yates v. United States*, 574 U.S. 528, 537 (2015). The Supreme Court has often held "that identical language may convey varying content when used in different statutes, [and] sometimes even in different provisions of the same statute." *Id.* (collecting cases). Where "the scope of the legislative power exercised in one case is broader than that exercised in another, the meaning [of identical words] well may vary to meet the purposes of the law . . . and of the circumstances under which the language was employed." *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932) (citations omitted). That's the case here. Section 5 of the Fourteenth Amendment and the Spending Clause do not empower Congress to the same degree, and *Tanzin* does nothing to fill that gap.

In sum, we concluded in *Sossamon I* that although RLUIPA's text suggests a damages remedy, recognizing as much would run afoul of the Spending Clause. *Tanzin* doesn't change that—it addresses a different law that was enacted under a separate Congressional power with "concerns not relevant to [RLUIPA]." *Tanvir v. Tanzin*, 894 F.3d 449, 467 n.12 (2d Cir. 2018), *aff'd*, 141 S. Ct. 486 (2020). Because *Sossamon I* remains the law, Landor cannot recover monetary damages against the defendant-officials in their individual capacities under RLUIPA.

## B.

Landor raises one final argument. He contends that our Spending Clause analysis in *Sossamon I* was flawed from the outset. Landor suggests that, per *Sabri v. United States*, 541 U.S. 600 (2004), "Congress has the power under the Spending Clause . . . to impose liability on officials who work" for a recipient of federal funds. But Landor's reading of *Sabri* is flawed.

In *Sabri*, a real estate developer tried to bribe a Minneapolis official to get preferential treatment in his dealings with the municipality. *Id.* at 602. When Sabri was caught, he was charged under 18 U.S.C. § 666(a)(2), or "Theft or bribery concerning receiving federal funds." *Id.* On appeal, the Supreme Court found § 666(a)(2) to be a valid exercise of Congressional authority under the Spending Clause. *Id.* at 608. Now, Landor contends that Sabri's conviction is proof positive that Congress can "bring federal power to bear directly on individuals," namely third parties who aren't privy to a funding agreement, under the spending power. But that's an oversimplistic, expansive reading.

Sure, *Sabri* recognized that Congress has the "prerogative to protect spending objects" by targeting individuals who aren't a party to the contract.

No. 22-30686

*Id.* at 608. That decision rested on a common-sense extension of the spending power—Congress can safeguard its allocated dollars from bribery, embezzlement, and "local administrators on the take." *Id.* Criminal punishments are simply a "rational means" for securing the valid use of federal funds. *Id.* at 605. From that it doesn't necessarily follow that Congress has the power to hold third-party, non-recipients (*e.g.*, employees) responsible for violating RLUIPA. As the Court said itself, Congress may impose criminal liability on those "who convert public spending into unearned private gain." *Id.* at 608. Landor's situation, both legally and factually, simply isn't comparable. *Sabri* involved criminal liability for a person who directly threatened the "object" of a spending agreement, namely federal dollars, while Landor is a civil case that's based on conduct unrelated to the federal purse. The Third Circuit similarly recognized the limits of *Sabri* in an RLUIPA case.

> Sharp's reliance on [*Sabri*] for the proposition that Congress may regulate the actions of third parties under the Spending Clause, is misplaced. In *Sabri*, Congress enacted the statute at issue, 18 U.S.C. § 666(a)(2), pursuant to its powers under the Spending and the Necessary and Proper Clauses to protect its expenditures against local bribery and corruption. Here, however, Congress did not enact RLUIPA to protect its own expenditures, but rather it enacted RLUIPA to protect the religious rights of institutionalized persons. Thus, *Sabri* is inapposite.

*Sharp v. Johnson*, 669 F.3d 144, 155 n.15 (3d Cir. 2012) (citation omitted).

The Ninth Circuit, too, has employed likeminded reasoning. In *Wood v. Yordy*, the plaintiff argued that *Sabri* "means defendants in a civil damage

11

action under RLUIPA need not be recipients of federal funds." 753 F.3d at 903. The Ninth Circuit—emphasizing the need to monitor monetary disbursements under the spending power—found that wasn't "a sensible conclusion." *Id.* In sum, as the Sixth Circuit found, "RLUIPA is nothing like the *Sabri* statute." *Haight*, 763 F.3d at 570. We agree.

## III.

We *emphatically* condemn the treatment that Landor endured. Still, we remain bound by our prior decision in *Sossamon I* that, under RLUIPA, he cannot seek money damages from officials in their individual capacities. *In re Bonvillian*, 19 F.4th at 792 (the rule of orderliness). Because the district court correctly held so, we AFFIRM.