# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 22-30686

DAMON LANDOR,

*Plaintiff-Appellant,*

v.

LOUISIANA DEPARTMENT OF CORRECTIONS AND PUBLIC SAFETY; JAMES M. LeBLANC, in his official capacity as Secretary thereof, and individually; RAYMOND LABORDE CORRECTIONAL CENTER; MARCUS MYERS, in his official capacity as Warden thereof, and individually; JOHN DOES 1-10; ABC ENTITIES 1-10,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA, BATON ROUGE IN CASE NO. 3:21-CV-733, SHELLY DECKERT DICK, U.S. DISTRICT JUDGE

## PETITION FOR REHEARING *EN BANC*
## FOR APPELLANT DAMON LANDOR

CASEY DENSON
CASEY DENSON LAW LLC
4601 Dryades Street
New Orleans, Louisiana 70115
(504) 224-0110
cdenson@caseydensonlaw.com

ZACHARY D. TRIPP
    *Counsel of Record*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

SHAI BERMAN
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Counsel for Appellant Damon Landor*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**1)  Plaintiff-Appellant:**

Damon Landor

**2)  Defendants-Appellees:**

Louisiana Department of Public Safety and Correction
James M. LeBlanc
Marcus Myers
Raymond Laborde Correctional Center

**3)  Counsel for Plaintiff-Appellant:**

Zachary D. Tripp and Shai Berman, Weil, Gotshal & Manges LLP
Casey Denson, Casey Denson Law LLP

**4)  Counsel for Defendant-Appellee:**

Phyllis Esther Glazer and LaKeisha A. Ford, Louisiana Department of Justice, Office of Attorney General

*/s/ Zachary D. Tripp*
Zachary D. Tripp
*Counsel of Record for Appellant*

## RULE 35(b) STATEMENT

This case raises a question of exceptional importance warranting en banc review: Whether the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. 2000cc et seq., permits a plaintiff to bring an individual-capacity claim for money damages against a state official for violations of the law's substantive protections of religious liberty. That question is extraordinarily important to the protection of religious liberty. This Court's precedent holding that an individual-capacity action is unavailable, see *Sossamon v. Texas*, 560 F.3d 316, 327-29 (5th Cir. 2009), *aff'd on other grounds*, 563 U.S. 277 (2011), conflicts with the Supreme Court's later reasoning in *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020). *Sossamon*'s holding that an individual-capacity damages remedy would be unconstitutional conflicts with *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014).

# TABLE OF CONTENTS

Rule 35(b) Statement ..................................................................... ii

Introduction ................................................................................. 1

Background ................................................................................... 4

Reasons for granting rehearing ................................................... 5

   I.   Whether individual-capacity damages are available under
       RLUIPA is an exceptionally important question of federal law ...... 5

  II.  *Sossamon*'s reasoning conflicts with *Tanzin* and the Sixth
       Circuit's decision in *Haight* ............................................... 10

      A.  *Sossamon*'s reasoning is contrary to *Tanzin* ............................. 10

      B.  *Sossamon*'s constitutional holding warrants review and
          conflicts with the Sixth Circuit's decision in *Haight* ................. 14

Conclusion .................................................................................. 18

Certificate of Service .................................................................. 19

Certificate of Compliance .......................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*City of Boerne v. Flores,*
521 U.S. 507 (1997) ................................................................. 7

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ................................................................... 8

*Employment Division v. Smith,*
494 U.S. 872 (1990) ............................................................ 1, 6

*Haight v. Thompson,*
763 F.3d 554 (6th Cir. 2014) ............................................. 3, 15

*Health & Hosp. Corp. v. Talevski,*
143 S. Ct. 1444 (2023) ........................................................ 17

*Holt v. Hobbs,*
574 U.S. 352 (2015) ............................................................... 7

*Horvath v. City of Leander,*
946 F.3d 787 (5th Cir. 2020) .................................................. 6

*Jennings v. Rodriguez,*
138 S. Ct. 830 (2018) ........................................................ 3, 12

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin,*
143 S. Ct. 1689 (2023) ........................................................ 15

*Larson v. Domestic & Foreign Com. Corp.,*
337 U.S. 682 (1949) ............................................................. 16

*Sabri v. United States,*
541 U.S. 600 (2004) ................................................. 15, 16, 17

*Sossamon v. Texas,*
560 F.3d 316 (5th Cir. 2009) ......................................... passim

*Sossamon v. Texas,*
563 U.S. 277 (2011) ............................................................. 13

*Tanzin v. Tanvir,*
141 S. Ct. 486 (2020) ..................................................... passim

*United States v. Kebodeaux,*
570 U.S. 387 (2013) ............................................................. 14

*Ware v. Louisiana Department of Corrections*,
   866 F.3d 263 (5th Cir. 2017) ............................................................ 2, 4

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972) ............................................................................ 5

*Wood & Selick, Inc. v. Compagnie Generale Transatlantique*,
   43 F.2d 941 (2d Cir. 1930) ............................................................... 9

**Constitution Provisions & Statutes**

U.S. Const. art. I, § 8, cl. 1 ........................................................... 16

Religious Freedom Restoration Act

   42 U.S.C. 2000bb-1(a) .............................................................. 6

   42 U.S.C. 2000bb-1(c) .............................................................. 7

   42 U.S.C. 2000bb-2(1) ......................................................... 7, 11

Religious Land Use and Institutionalized Persons Act

   42 U.S.C. 2000cc-1(a) .............................................................. 7

   42 U.S.C. 2000cc-2(a) ......................................................... 7, 12

   42 U.S.C. 2000cc-3(g) ......................................................... 3, 12

   42 U.S.C. 2000cc-5(4) ......................................................... 7, 11

42 U.S.C. 300a-8 ......................................................................... 18

42 U.S.C. 1395dd(d)(1) .............................................................. 17

42 U.S.C. 1983 ........................................................................... 5

## INTRODUCTION

In *Employment Division v. Smith*, 494 U.S. 872 (1990), the Supreme Court sharply curtailed protection for religious exercise. Congress responded by enacting the Religious Freedom Restoration Act (RFRA), 42 U.S.C. 2000bb *et seq.*, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. 2000cc *et seq.*, to "reinstate[] both the pre-*Smith* substantive protections of the First Amendment *and* the right to vindicate those protections by a claim." *Tanzin v. Tanvir*, 141 S. Ct. 486, 492 (2020). In *Tanzin*, the Supreme Court held that individual-capacity damages actions are available under RFRA against a federal official who violates pre-*Smith* protections for religious exercise.

The question presented is whether RLUIPA provides the same individual-capacity damages remedy against state officials. The panel viewed itself as bound by *Sossamon v. Texas*, 560 F.3d 316, 327-29 (5th Cir. 2009), *aff'd on other grounds*, 563 U.S. 277 (2011), to hold that RLUIPA does not permit individual-capacity claims. Op. 12. Rehearing is warranted so that the Court can reconsider *Sossamon* in light of *Tanzin*.

First, the question of whether RLUIPA provides for individual-capacity damages is exceptionally important. The Supreme Court granted certiorari in *Tanzin*, without a circuit conflict, to decide this same question under RFRA. A damages remedy is often "the *only* form of relief" that can provide any remedy for the law's protection of religious exercise. *Tanzin*,

141 S. Ct. at 492. Without a remedy, those protections are largely meaningless.

This case vividly illustrates the problem. Damon Landor, a devout Rastafarian, arrived at a Louisiana prison with dreadlocks he had been wearing for almost 20 years. With him, he brought a copy of *Ware v. Louisiana Department of Corrections*, 866 F.3d 263 (5th Cir. 2017), which held that "Louisiana's policy of cutting the hair of Rastafarians violated RLUIPA." Op. 2. Prison officials nonetheless "threw Landor's papers in the trash," strapped him down, and had him shaven bald. *Id.* The panel "*emphatically* condemn[ed]" Landor's gross mistreatment. Op. 12. But "bound by" *Sossamon*'s "shackles," the panel denied him any remedy. Op. 6, 12.

*Sossamon*'s rule that an individual-capacity claim is unavailable effectively nullifies the pre-*Smith* protections that Congress and this Court have sought to vindicate. Numerous amici—an enormous range of religious groups as well as leading scholars of religious freedom—have come forward to emphasize the vital importance of a damages remedy.

Second, *Sossamon*'s reasoning conflicts with *Tanzin*. *Sossamon* recognized that, if an individual-capacity action were available, then damages would be available as well. 560 F.3d at 327 & n.26. But *Sossamon*

read RLUIPA not to authorize individual-capacity actions. *Tanzin* fore-closes that holding. *Tanzin* asked "if injured parties can sue Government officials in their personal capacities." 141 S. Ct. at 490. The Court held that "RFRA's text provides a clear answer: They can." *Id.* RLUIPA's text is materially identical. Neither *Sossamon* nor the panel provided any textual basis for reaching a different conclusion. None exists.

*Sossamon* relied on constitutional avoidance, reasoning that, "although RLUIPA's text suggests a damages remedy, recognizing as much would run afoul of the Spending Clause." Op. 10. But that further conflicts with *Tanzin*: *Tanzin*'s "plain meaning" analysis about what RFRA's text made "clear" and what it "must" mean, 141 S. Ct. at 490-492, forecloses application of avoidance. See *Jennings v. Rodriguez*, 138 S. Ct. 830, 836, 842 (2018). Moreover, *Sossamon* overlooked that Congress provided that RLUIPA must be read "to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. 2000cc-3(g).

Third, as the panel recognized, see Op. 8 n.5, *Sossamon*'s determination that a damages remedy would be unconstitutional conflicts with the Sixth Circuit's determination that such a remedy would be valid. See *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014) (Sutton, J.). This Court therefore should grant rehearing en banc to reconsider *Sossamon* and restore pre-*Smith* protections for religious exercise.

# BACKGROUND

1.     Damon Landor is a Rastafarian who adheres to the Nazarite Vow to "let … the hair of his head grow" in "dedication to the Lord." Op. 2. "Landor kept that promise—for almost two decades, he didn't cut his hair." *Id.*[1]

In 2020, Landor was incarcerated in Louisiana state prison. During his first five months of incarceration, "each facility respected Landor's vow." *Id.*; *see Ware*, 866 F.3d at 273 (explaining that most prisons allow religious wearing of dreadlocks). "Then, after five peaceful months—and with only three weeks left in his sentence—Landor was transferred" to the Raymond Laborde Correctional Center. Op. 2. During his intake interview, Landor explained that he was Rastafarian and "provided proof of past religious accommodations." *Id.* Even more, he "handed the guard a copy" of *Ware*, which held that "Louisiana's policy of cutting the hair of Rastafarians violated RLUIPA." *Id.*

"Unmoved by [this Court's] caselaw, the guard threw Landor's papers in the trash." *Id.* The guard summoned the warden, Marcus Myers, who demanded documentation from Landor's "sentencing judge that corroborated his religious beliefs." *Id.* "When Landor couldn't instantly meet that demand, two guards carried him into another room, handcuffed him to a

---

[1] This case arises on a motion to dismiss so facts stated in the complaint are taken as true. Op. 2 n.1.

chair, held him down, and shaved his head." Op. 2-3. As further punishment for invoking his religious rights, Landor was held in lockdown for the remainder of his sentence. ROA.19.

2.    As relevant, Landor sued Myers and the Secretary of the Department of Corrections, James LeBlanc, for damages in their individual capacities under RLUIPA. The district court dismissed, relying on circuit precedent to hold that RLUIPA "'does not authorize a private cause of action for compensatory or punitive damages.'" Op. 3.

Landor appealed and the panel affirmed. The panel "*emphatically* condemn[ed] the treatment that Landor endured." Op. 12. But the panel determined that it was "bound by [the] prior decision in *Sossamon I* that, under RLUIPA, he cannot seek money damages from officials in their individual capacities." *Id.*

## REASONS FOR GRANTING REHEARING

## I.    Whether individual-capacity damages are available under RLUIPA is an exceptionally important question of federal law

1.    Until 1990, the Free Exercise Clause was understood to prevent the government from substantially burdening a person's religious exercise, unless that was the least restrictive means of advancing a compelling interest. *E.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 215, 220-21 (1972). And Congress provided a remedy to vindicate that right: Through 42 U.S.C. 1983, a person could bring individual-capacity damages actions against

state officers who violated that substantive protection for religious liberty. *See Tanzin*, 141 S. Ct. at 492.

In *Employment Division v. Smith,* 494 U.S. 872 (1990), a divided Supreme Court adopted a very different rule. *Smith* held "that the First Amendment tolerates neutral, generally applicable laws that burden or prohibit religious acts even when the laws are unsupported by a narrowly tailored, compelling governmental interest." *Tanzin*, 141 S. Ct. at 489.

*Smith* sharply undercut protections for religious exercise. For example, Justice O'Connor described its rule as "incompatible with our Nation's fundamental commitment to individual religious liberty." *Smith*, 494 U.S. at 891 (O'Connor, J., concurring in judgment). *Smith* continues to be criticized today. *E.g.*, *Horvath v. City of Leander*, 946 F.3d 787, 794-95 (5th Cir. 2020) (Ho, J., concurring in the judgment in part and dissenting in part) ("[*Smith*] is widely panned").

Congress responded by enacting not one but two statutes to "reinstat[e] both the pre-*Smith* substantive protections of the First Amendment *and* the right to vindicate those protections by a claim." *Tanzin*, 141 S. Ct. at 489, 492. First, Congress enacted RFRA, restoring the pre-*Smith* compelling-interest test. 42 U.S.C. 2000bb-1(a). Congress also provided a cause of action that enables a person to "obtain appropriate relief against a government," and defined "government" to include an "official (or other

person acting under color of law)." 42 U.S.C. 2000bb-1(c), 2000bb-2(1). As was the case before *Smith* under Section 1983, that cause of action authorizes individual-capacity damages claims. *Tanzin*, 141 S. Ct. at 489, 492.

Initially, RFRA applied to the federal and state governments and officials. See *Tanzin*, 141 S. Ct. at 492. After the Supreme Court invalidated RFRA's state applications as exceeding Congress's powers under the Fourteenth Amendment, see *City of Boerne v. Flores*, 521 U.S. 507, 532 (1997), Congress responded by enacting RLUIPA, again acting to restore the pre-*Smith* landscape. RLUIPA concerns land-use regulation and institutionalized persons, and "applies to the States and their subdivisions and invokes congressional authority under the Spending and Commerce Clauses." *Holt v. Hobbs*, 574 U.S. 352, 357 (2015).

RLUIPA's substantive and remedial provisions "mirror[] RFRA." *Id.* at 357-58. Like RFRA, RLUIPA restores the pre-*Smith* compelling-interest test, see 42 U.S.C. 2000cc-1(a), provides a cause of action to "obtain appropriate relief against a government," 42 U.S.C. 2000cc-2(a), and defines "government" to include an "official" and any "other person acting under color of … law," 42 U.S.C. 2000cc-5(4).

*Sossamon* nonetheless holds that pre-*Smith* remedies are unavailable under RLUIPA. Before *Smith*, individual-capacity money damages

claims were available under Section 1983. Per *Tanzin*, such relief is available against federal officials under RFRA. See Op. 7. Yet *Sossamon* holds that same relief is unavailable under RLUIPA.

2.    Whether *Sossamon* is correct is an exceptionally important question of federal law that warrants en banc review, just as *Tanzin* warranted Supreme Court review. This case presents the same question as *Tanzin* but in the context of RLUIPA: Are individual-capacity damages available? In *Tanzin*, the Supreme Court granted review without a circuit split or any alleged conflict with that Court's precedent, thus underscoring the importance of the question. See Pet. 11, *Tanzin*, 141 S. Ct. 486 (No. 19-71), 2019 WL 3075898 ("[N]o circuit conflict exists on the question presented."). The RLUIPA question is equally important—and *Sossamon*'s reasoning conflicts with both *Tanzin* and *Haight*. See Part II, *infra*.

An individual-capacity damages remedy is vital to the protection of religious exercise. Damages are often "the *only* form of relief" that can remedy violations of religious exercise. *Tanzin*, 141 S. Ct. at 492. Injunctive and declaratory relief do not remedy past harms, no matter how severe. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Injunctive and declaratory relief also become moot whenever a person is released or transferred. Under RLUIPA, it is thus often damages or nothing. See Prof. Laycock Br. 15-19.

Without a remedy, state officials can brazenly disregard RLUIPA's substantive protections for religious liberty, rendering them largely meaningless. See *id.*; see *Wood & Selick, Inc. v. Compagnie Generale Transatlantique*, 43 F.2d 941, 943 (2d Cir. 1930) (L. Hand, J.) ("[A] right without any remedy is a meaningless scholasticism."). This case is a vivid example. In *Ware*, this Court held that Louisiana's policy of cutting the hair of Rastafarian inmates violated RLUIPA. Landor even gave the guards a copy of *Ware*. Yet they responded by throwing this Court's precedent into the trash before shaving Landor bald. Op. 2.

The state officers thus flagrantly violated Landor's rights, Congress's mandate, and this Court's precedent. Yet under *Sossamon*, courts are powerless to right the wrong. The panel "*emphatically* condemn[ed]" Landor's treatment. Op. 12. But the panel's condemnation provides Landor no remedy and does nothing to prevent state officials from continuing to disregard religious freedom. The officials who threw this Court's precedent into the trash could do so again.

This risk is not hypothetical. Since *Ware*, at least five other Rastafarian plaintiffs have filed RLUIPA claims against Louisiana officials for forcibly cutting their dreadlocks in defiance of *Ware*. In each case, prison officials evaded accountability because of *Sossamon*. Reply Br. 11-12 (collecting cases).

Numerous amici have emphasized the importance of this issue—and the breadth of religious practice that is threatened in the absence of a damages remedy. *E.g.*, Br. of 35 Religious Organizations 1 ("Amici have a clear interest in ensuring that robust enforcement mechanisms are in place to prevent RLUIPA from becoming an empty promise."); Bruderhof Br. 4 ("[I]ndividual-capacity damages under RLUIPA are vital to protect religious minorities in prisons."). *Sossamon* also jeopardizes "well-documented benefits of religious exercise in prison" specifically, as religious practice has been shown to reduce prison misconduct, improve prison safety, and lower recidivism. Prof. Johnson Br. 4-18.

## II. *Sossamon*'s reasoning conflicts with *Tanzin* and the Sixth Circuit's decision in *Haight*

*Sossamon* further warrants review because it was decided without the benefit of *Tanzin* and its reasoning is contrary to *Tanzin*. *Sossamon* also rests on the view that a damages remedy "would run afoul of the Spending Clause." Op. 10. That determination is itself exceptionally important and contrary to the Sixth Circuit's determination in *Haight*. See Op. 8 n.5 (recognizing the conflict).

### A. *Sossamon*'s reasoning is contrary to *Tanzin*

1. In *Sossamon*, this Court "assume[d] that if RLUIPA creates an action against defendants in their individual capacities, then it provides for damages." 560 F.3d at 327. Without the benefit of *Tanzin*, however, this

Court concluded that RLUIPA did not provide for "individual-capacity actions." *Id.*

*Tanzin* forecloses *Sossamon*'s holding that individual-capacity actions are unavailable. In *Tanzin*, the Supreme Court first asked "if injured parties can sue Government officials in their personal capacities." 141 S. Ct. at 490. The Court held that "RFRA's text provides a clear answer: They can." *Id.* The Court relied on RFRA's text authorizing suits against an "official (or other person acting under color of law)." 42 U.S.C. 2000bb-2(1). The Court explained that an "official" means "the actual person 'who is invested with an office,'" and "relief against 'a person' cannot be squared with" excluding individual-capacity claims. 141 S. Ct. at 490. Furthermore, Congress drew the phrase "persons acting under color of law" from Section 1983, which the Court had "long interpreted" to "permit suits against officials in their individual capacities." *Id.*

There is no textual basis for reaching a different result under RLUIPA. RLUIPA's relevant text is exactly the same as RFRA's and it is equally unambiguous: Like RFRA, RLUIPA permits plaintiffs to sue an "official" or "any other person acting under color of … law." 42 U.S.C. 2000cc-5(4). And like RFRA, RLUIPA was enacted "in the very same field of civil rights

law" as Section 1983. *Tanzin*, 141 S. Ct. at 490. Thus, RLUIPA's text provides that same "clear answer": "injured parties can sue Government officials in their personal capacities." *Id.*

*Sossamon* invoked constitutional avoidance to reach a contrary result. See Op. 10. But that too conflicts with *Tanzin*: Avoidance has no role to play when the text is unambiguous. See *Jennings v. Rodriguez*, 138 S. Ct. 830, 836, 842 (2018). And *Tanzin* holds that the text provides a "clear answer": Individual-capacity claims are available. 141 S. Ct. at 490.

*Sossamon* also overlooked that RLUIPA expressly forecloses application of constitutional avoidance. Congress provided that RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. 2000cc-3(g). S*ossamon*'s reliance on avoidance thus conflicts with both *Tanzin* and RLUIPA's rule of construction.

2.   *Tanzin* additionally confirms that this Court was correct to assume that, if RLUIPA authorizes individual-capacity actions, damages are available as "appropriate relief," 42 U.S.C. 2000cc-2(a). See *Sossamon*, 560 F.3d at 327 & n.26. *Tanzin* held that the "plain meaning" of RFRA's provision for "appropriate relief" in an individual-capacity action included money damages. 141 S. Ct. at 491-92. The Court explained that "[i]n the context of suits against Government officials"—whether federal, state, or

local—"damages have long been awarded as appropriate relief," including "under § 1983." *Id.* The Court found Section 1983 "particularly salient" because RFRA "made clear that it was reinstating both the pre-*Smith* substantive protections of the First Amendment *and* the right to vindicate those protections by a claim." *Id.* at 492. "Given that RFRA reinstated pre-*Smith* protections and rights, parties suing under RFRA must have at least the same avenues for relief against officials that they would have had before *Smith,*" which included "a right to seek damages against Government employees." *Id.* Moreover, damages must be "appropriate relief" because damages are "the only form of relief that can remedy some RFRA violations." *Id.*[2]

*Tanzin*'s "plain meaning" analysis about what Congress made "clear" and what RFRA "must" mean, 141 S. Ct. at 491-492, applies with full force to individual-capacity claims under RLUIPA. Indeed, the parallel to Section 1983 is stronger because, like Section 1983, RLUIPA provides a cause of action against state officials or others acting under color of state law. This Court therefore should reconsider *Sossamon* in light of *Tanzin* to hold

---

[2] *Tanzin* also distinguished *Sossamon v. Texas*, 563 U.S. 277 (2011), which held that damages were not "appropriate relief" in actions against a State. The "obvious difference," *Tanzin* explained, was that the State enjoys sovereign immunity, whereas individual officials do not. 141 S. Ct. at 493.

that individual-capacity damages are available, thus restoring pre-*Smith* rights and remedies.

## B. *Sossamon*'s constitutional holding warrants review and conflicts with the Sixth Circuit's decision in *Haight*

*Sossamon* reached a contrary result—and the panel distinguished *Tanzin*—on the ground that a damages remedy "would run afoul of the Spending Clause." Op. 10. *Sossamon* reasoned that RLUIPA was enacted pursuant to the Spending Clause and the individual officials could not be held liable because they were not themselves recipients of federal funds. See 560 F.3d at 328. The panel determined that *Tanzin* did not abrogate that holding, because *Tanzin* does not address the Spending Clause. See Op. 8-10. *Sossamon*'s constitutional holding, however, further strengthens the need for en banc review.

First, the invalidation of a federal statute on constitutional grounds is inherently important and worthy of review. See *United States v. Kebodeaux*, 570 U.S. 387, 391 (2013) (collecting cases). Second, as the panel recognized, the Sixth Circuit reached a contrary conclusion when analyzing the same constitutional question, "explicitly denounc[ing] the third-party liability rational[e]" that *Sossamon* relied upon. Op. 8 n.5. In *Haight*, the Sixth Circuit held that RLUIPA did not provide a damages remedy because it failed to provide the requisite clear notice—but rejected the

view that Congress could not constitutionally impose liability on individual officials. See 763 F.3d at 567-70. The Sixth Circuit explained that such a rule "proves too much" and is "not consistent with" the Supreme Court's Spending Clause precedents. *Id.* at 570.[3]

*Haight*'s view of Congress's authority is correct—and *Sossamon* is wrong. In addition to Congress' power to impose conditions on the receipt of federal funds, it "has corresponding authority under the Necessary and Proper Clause, Art … to see to it that [the] taxpayer dollars appropriated … are in fact spent for the general welfare." *Sabri v. United States*, 541 U.S. 600, 605 (2004). In *Sabri*, the Supreme Court upheld a federal law imposing criminal liability on third parties who offer bribes to officials for state or local governments that accept federal funds, even though those individuals were not themselves grant recipients and indeed are ordinary private citizens. The Supreme Court explained that imposing liability on third party bribers represents a "rational means" of ensuring that taxpayer funds "are in fact spent for the general welfare." *Id.*

---

[3] *Tanzin* forecloses *Haight*'s view that RLUIPA fails to provide clear notice. Clear-statement requirements are not "magic-words requirement[s]"; they are satisfied when, after "applying 'traditional' tools of statutory interpretation," Congress's intent is "'clearly discernable' from the statute itself." *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 143 S. Ct. 1689, 1695-96 (2023).

Imposing individual liability on state prison officials under RLUIPA—the agents of the funding recipient and thus third-party beneficiaries of the federal funds—similarly represents a "rational means" of ensuring that federal funds "are in fact spent for the general welfare." *Id.* Indeed, because state prisons "can act only through agents," *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 688 (1949), damages provide a particularly vital tool for ensuring that prison officials who benefit from federal funds obey—and do not flout—the conditions that Congress has imposed on their expenditure to ensure they support the general welfare.

*Sossamon* did not address *Sabri* or the Necessary and Proper Clause. The panel distinguished *Sabri*, however, on the ground that "*Sabri* involved criminal liability for a person who directly threatened the '*object*' of a spending agreement, namely federal dollars, while [this] is a civil case that's based on conduct unrelated to the federal purse." Op. 11. But the "object" of federal spending is to advance the "general Welfare." U.S. Const. art. I, § 8, cl. 1. In *Sabri*, the general welfare was advanced by ensuring "[]trustworthy" public projects that "deliver[ed] dollar-for-dollar value." 541 U.S. at 605-06. Here, it is advanced by ensuring that state prisons that participate in federal programs respect religious liberty. And just as third-party bribes "threatened" achievement of Congress's goals in

in *Sabri*, prison officers who violate religious freedom "threaten[]" Congress's goal here. *Id.* at 606.

The nexus to federal spending here is stronger than in *Sabri*. The provision upheld in *Sabri* applied to a member of the general public who paid a bribe to an official at an agency that happened to receive federal funds. *Id.* at 602. RLUIPA, by contrast, imposes liability on state officials who are *employees of the funding recipient*, and thus themselves third-party beneficiaries of the federal funds. See *Sossamon,* 560 F.3d at 329 n.36. Indeed, because "[m]oney is fungible," *id.*, the officers can be understood to be paid in part with federal funds. Congress has the authority under the Necessary and Proper Clause to follow the money and ensure that employees who receive the benefit of federal funds also must follow conditions imposed to ensure they advance the general welfare.

*Sossamon* further warrants review because its constitutional holding imperils other Spending Clause statutes that provide a damages remedy. For example, Section 1983 itself can provide a remedy for Spending Clause legislation. See *Health & Hosp. Corp. v. Talevski*, 143 S. Ct. 1444, 1450 (2023). The Emergency Medical Treatment and Active Labor Act imposes civil penalties against "any physician … in a participating hospital" who violates certain provisions related to patient treatment. 42 U.S.C.

1395dd(d)(1). And Title X levies fines on and provides for the imprisonment of an "employee of any … entity" that administers "any program receiving Federal financial assistance" "who coerces or endeavors to coerce any person to undergo an abortion." 42 U.S.C. 300a-8.

Rehearing accordingly is warranted to reconsider *Sossamon*, which was decided without the benefit of *Tanzin* or briefing on the Necessary and Proper Clause.

## CONCLUSION

For the foregoing reasons, this Court should grant rehearing en banc. Respectfully submitted,

Casey Denson
CASEY DENSON LAW LLC
4601 Dryades Street
New Orleans, LA 70115
(504) 224-0110
cdenson@caseydensonlaw.com

*/s/ Zachary D. Tripp*
Zachary D. Tripp
   *Counsel of Record*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

Shai Berman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

October 12, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/ Zachary D. Tripp*
Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

October 12, 2023

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies pursuant to Fed. R. App. P. 32(g) that the Brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this document contains 3,867 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14 point size.

*/s/ Zachary D. Tripp*

Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

*Attorney for Appellant Damon Landor*

October 12, 2023

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 14, 2023

Lyle W. Cayce
Clerk

No. 22-30686

Damon Landor,

*Plaintiff—Appellant,*

*versus*

Louisiana Department of Corrections and Public Safety; James M. LeBlanc, *in his official capacity as Secretary thereof, and individually*; Raymond Laborde Correctional Center; Marcus Myers, *in his official capacity as Warden thereof, and individually*; John Does 1-10; ABC Entities 1-10,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-733

Before Clement, Graves, and Higginson, *Circuit Judges.*

Edith Brown Clement, *Circuit Judge*:

The question presented is whether the Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides for money damages against officials sued in their individual capacities. Because we've already answered that question in the negative, we AFFIRM.

## I.

Damon Landor is a devout Rastafarian who vowed to "let the locks of the hair of his head grow," a promise known as the Nazarite Vow. *See Numbers* 6:5.[1] Landor kept that promise—for almost two decades, he didn't cut his hair. But that changed when he arrived at the Raymond Laborde Correctional Center.

Stepping back, Landor was incarcerated in 2020. During his brief stint in prison, Landor was primarily housed at two facilities, St. Tammany Parish Detention Center and LaSalle Correctional Center. Both stays were relatively uneventful—each facility respected Landor's vow and allowed him to either wear his hair long or to keep it under a "rastacap." LaSalle even went as far as to *voluntarily* amend its grooming policy to allow Landor to keep his dreads. Then, after five peaceful months—and with only three weeks left in his sentence—Landor was transferred to RLCC.

Upon arrival, Landor was met by an intake guard. Acting preemptively, Landor explained that he was a practicing Rastafarian and provided proof of past religious accommodations. And, amazingly, Landor also handed the guard a copy of our decision in *Ware v. Louisiana Department of Corrections*, 866 F.3d 263 (5th Cir. 2017), which held that Louisiana's policy of cutting the hair of Rastafarians violated RLUIPA. Unmoved by our caselaw, the guard threw Landor's papers in the trash and summoned RLCC's warden, Marcus Myers. When Myers arrived, he demanded Landor hand over documentation from his sentencing judge that corroborated his religious beliefs. When Landor couldn't instantly meet that demand, two

---

[1] Because this arrives on appeal from a granted motion to dismiss, the facts in the complaint are taken as true. *See White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).

guards carried him into another room, handcuffed him to a chair, held him down, and shaved his head.

After he served his time, Landor sued the Louisiana Department of Corrections, the prison, Myers, and the Department's Secretary, James LeBlanc, in their individual and official capacities. Landor brought claims under RLUIPA and § 1983 for violations of his First, Eighth, and Fourteenth Amendment rights. He also pleaded state law claims for negligence, intentional infliction of emotional distress, and violations of the Louisiana constitution. Below, the defendants moved to dismiss. As is relevant here, Myers and LeBlanc argued that Landor's RLUIPA claims against them in their individual capacities are barred under our precedent. The district court agreed and held that those claims were "moot as [RLUIPA] 'does not authorize a private cause of action for compensatory or punitive damages.'" Landor appeals.

## II.

We review a district court's dismissal for failure to state a claim *de novo*. *Thurman v. Med. Trans. Mgmt., Inc.*, 982 F.3d 953, 955 (5th Cir. 2020). To survive a motion to dismiss, a complaint "must contain sufficient factual matter [] to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted). In reviewing a complaint, we "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Thurman*, 982 F.3d at 955 (quotations and citation omitted).

On appeal, Landor maintains that RLUIPA allows litigants to recover money damages against officials in their individual capacities.[2] That

---

[2] The defendants argue that Landor forfeited this argument by filing nothing below beyond his complaint. While we agree that not pressing an argument before the district

argument, however, runs squarely into one of our decisions, *Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009), *aff'd*, 563 U.S. 277 (2011) [hereinafter *Sossamon I* and *Sossamon II*, respectively]. In *Sossamon I*, we plainly held that RLUIPA does not permit suits against officers in their individual capacities, which, in turn, means claimants cannot recover monetary damages. *Sossamon I*, 560 F.3d at 329. That decision ends this case. Landor, however, advances two arguments in response: (1) a recent Supreme Court decision abrogated *Sossamon I*, and (2) alternatively, our reasoning in *Sossaman I* was flawed. We take those in turn.

## A.

First, abrogation. To overcome our decision in *Sossamon I*, Landor points us to *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020). There, the Supreme Court concluded that—under the Religious Freedom Restoration Act ("RFRA")—litigants can "obtain money damages against federal officials in their individual capacities." *Id.* at 493. But that's not enough for abrogation.

Generally speaking, "for a Supreme Court decision to change our Circuit's law, it must be more than merely illuminating with respect to the case before the court"—it "must unequivocally overrule prior precedent." *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) (cleaned up). That requires more than merely a "flawed"

---

court often means it is forfeited, we generally conclude otherwise when the issue "fairly appears in the record as having been raised *or decided*." *Lampton v. Diaz*, 639 F.3d 223, 227 n.14 (5th Cir. 2011) (emphasis added) (quotations and citation omitted); *see also Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 276 n.1 (5th Cir. 1990) (per curiam) ("The arguments we are considering, however, were those made by the district court in dismissing the complaint. . . . [T]here is no rule which forbids [the appellant] from urging that the grounds given by the district court for dismissing her complaint are wrong."). The defendants below insisted—and the district court agreed—that RLUIPA did not allow a suit against officials in their individual capacities for money damages. Consequently, Landor is now free to argue to the contrary, and we may hear him out.

"interpretation of the law" by a past panel. *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (quotations and citation omitted). Still, it is not necessary that the Court "explicitly overrule the circuit precedent at issue, or specifically address the precise question of law at issue." *In re Bonvillian Marine Service, Inc.*, 19 F.4th 787, 792 (5th Cir. 2021). Instead, the key focus is whether "a former panel's decision has fallen unequivocally out of step with some intervening change in the law." *Id.* That includes, for example, decisions that have been "implicitly overruled [by] a subsequent Supreme Court opinion establish[ing] a rule of law inconsistent with that precedent." *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) (quotations and citation omitted).

Consider *Sossamon I*. In that case, an inmate sued under RLUIPA to recover compensatory and punitive damages from several prison officials in their individual capacities. *Sossamon I*, 560 F.3d at 321, 322 & n.2. On appeal, however, we held that "an action under RLUIPA does not exist for individual-capacity claims . . . ." *Id.* at 329. We found that although RLUIPA seems to contemplate "action[s] against defendants in their individual capacities," including money damages, doctrine dictated otherwise. *Id.* at 327 & n.26. Sure, RLUIPA's language—"any other person acting under color of state law"—"mirrors the 'under color of' language in § 1983, which . . . creates an individual-capacity cause of action for damage." *Id.* at 328 (quoting 42 U.S.C. § 2000cc-5). But RLUIPA has other considerations at play. Unlike § 1983 or its sister statute, RFRA, RLUIPA was "enacted pursuant to Congress's Spending Clause power, not pursuant to the Section 5 power of the Fourteenth Amendment." *Id.* Spending Clause legislation "operates like a contract," so "only the grant recipient—the state—may be liable for its violation." *Id.* In other words, Spending Clause legislation does not "impose *direct* liability on a non-party to the contract between the state and the federal government." *Id.* at 329. So, "as a matter of statutory

No. 22-30686

interpretation and to avoid the constitutional concerns that an alternative reading would entail," we held that RLUIPA did not permit suits against defendants in their individual capacities. *Id.*[3]

But Landor insists that we've been freed from *Sossamon I*'s shackles by the Supreme Court's decision in *Tanzin*, 141 S. Ct. 486. In *Tanzin*, the Court held that RFRA authorizes money damages against officials sued in their individual capacities. *Id.* at 493. Starting with the text, the Court emphasized that RFRA says a plaintiff can sue "official[s] (or other person[s] acting under color of law)" broadly. *Id.* at 490 (quoting 42 U.S.C. § 2000bb-2(1)). Although that is not typically what a suit against the "government" means, the Court concluded that RFRA simply expanded the horizon to include officials. *Id.* Such a conclusion was apparent from context, too. RFRA employs almost the same language—"person[s] acting under color of law"—as § 1983, the latter of which the Court had "long interpreted . . . to permit suits against officials in their individual capacities." *Id.* (citation omitted). Because "RFRA uses the same terminology as § 1983 in the very same field of civil rights law, it is reasonable to believe that the terminology bears a consistent meaning." *Id.* at 490–91 (quotations and citation omitted). So, like under § 1983, the Supreme Court found that plaintiffs can proceed against officials in their individual capacities under RFRA.

What, then, is the proper remedy for litigants seeking to recover against officials in their individual capacities? Money, for one. *Id.* at 493. Generally, the Court read "appropriate relief" as "'open-ended' on its face," meaning "what relief is 'appropriate' is 'inherently context

---

[3] The court also held that even if RLUIPA created a cause of action for damages against officials in their *official* capacities, such suits were nevertheless barred by a state's sovereign immunity. *Sossamon I*, 560 F.3d at 329–31. It is this conclusion that the Supreme Court affirmed. *See generally Sossamon II*, 563 U.S. 277.

dependent.'" *Id.* at 491 (quoting *Sossamon II*, 563 U.S. at 286). And, in the context of suits against government officials in their individual capacities, the Court had long blessed monetary damages as appropriate. *Id.* That was doubly true for RFRA given that it was passed to "reinstat[e]" the Court's prior, more robust protections for the "First Amendment *and* the right to vindicate those protections by a claim." *Id.* As § 1983 had always permitted damages "for clearly established violations of the First Amendment," "parties suing under RFRA must have at least the same avenues for relief against officials that they would have had" in the past. *Id.* at 492. That, of course, includes money.[4]

We held that RLUIPA does not permit suits for money damages against officers in their individual capacities. The Supreme Court then held that RFRA does. So, does the latter holding abrogate our former one? We find that it does not. Reaching that decision is straightforward enough because, after all, *Sossamon I* and *Tanzin* involve *different laws*. That alone is not necessarily dispositive—"[s]ometimes a Supreme Court decision involving one statute implicitly overrules our precedent involving another statute," and "[s]ometimes it does not." *Gahagan*, 911 F.3d at 302–03 (collecting cases). But the point is made when we look to "the similarity of the issues decided." *Id.* at 303. And, *Tanzin* doesn't address, directly or indirectly, our decision in *Sossamon I*. Instead, it tackled the existence of individual damages under RFRA. 141 S. Ct. at 490. Referring to RLUIPA

---

[4] Not to mention, for some violations of RFRA, damages are not just "appropriate," but the "*only* form of relief that can remedy" the harm. *Tanzin*, 141 S. Ct. at 492. For some injuries—like the inability to use plane tickets or the destruction of religious property—an injunction does not, and cannot, right the wrong. *Id.* (citing examples). Since RFRA permits "appropriate relief," "it would be odd to construe [it] in a manner that prevents courts from awarding such relief" (especially since, noted the Court, Congress *had* restricted remedies to those in equity elsewhere). *Id.* (citing 29 U.S.C. §1132(a)(3), 42 U.S.C. § 2000e-5(g)(1), and 15 U.S.C. § 78u(d)(5)).

only as a "related statute," the unanimous Court didn't extend the holding in *Tanzin*, much less its logic, to RLUIPA. The Court's sole mention of RLUIPA differentiates the case from a prior one, *Sossamon II*. *Id.* at 492–93. That relative silence makes sense, though: RLUIPA and RFRA rely on different Congressional powers. *See Holt v. Hobbs*, 574 U.S. 352, 357 (2015) (noting RFRA's basis in the Fourteenth Amendment and RLUIPA's in the Spending and Commerce Clauses).

That distinction wasn't lost on other circuits.[5] For example, in *Mack v. Warden Loretto FCI*, the Third Circuit grappled with this distinction, too. 839 F.3d 286, 303 (3d Cir. 2016). In recognizing individual damages under RFRA, the court distinguished its prior prohibition on such a remedy under

---

[5] Most other circuits' reasoning tracks ours in *Sossamon I* (*i.e.*, that because RLUIPA is Spending Clause legislation, non-recipients of funds cannot be liable). *See, e.g.*, *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities because the legislation was enacted pursuant to Congress' spending power . . . which allows the imposition of conditions . . . only on those parties actually receiving the state funds."); *Sharp v. Johnson*, 669 F.3d 144, 154–55 (3d Cir. 2012) ("Pennsylvania, not Defendants, was the direct recipient of any federal funds. Thus, RLUIPA cannot impose direct liability on Defendants, who were not parties to the contract created between Pennsylvania and the federal government."); *Nelson v. Miller*, 570 F.3d 868, 887–89 (7th Cir. 2009) (same); *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) ("The statute does not authorize suits against a person in anything other than an official or governmental capacity, for it is only in that capacity that the funds are received."); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) (agreeing with *Sossamon I*); *Smith v. Allen*, 502 F.3d 1255, 1269–76 (11th Cir. 2007) (same). A couple of the other circuits advance a slightly different, but still related, line of reasoning. *Rendelman v. Rouse*, 569 F.3d 182, 187–89 (4th Cir. 2009), declined to answer whether Spending Clause legislation can impose liability on non-recipients, holding instead that either way, RLUIPA did not provide clear notice that it was doing so. *Haight v. Thompson*, 763 F.3d 554, 567–70 (6th Cir. 2014), also held that RLUIPA did not clearly impose any such liability as a condition of accepting funds, but explicitly denounced the third-party liability rational as "prov[ing] too much."

RLUIPA. *Id.* The court, in other words, was "unmoved . . . by the similarities in the text of RFRA and its sister statute, RLUIPA." *Id.*

> Although the judicial relief provision in RLUIPA mirrors that in RFRA, RLUIPA was enacted pursuant to Congress's powers under the Spending Clause, thereby allowing Congress to impose certain conditions, such as civil liability, on the recipients of federal funds, such as state prison institutions. Because state officials are not direct recipients of the federal funds, and thus would have no notice of the conditions imposed on them, they cannot be held individually liable under RLUIPA. RFRA, by contrast, was enacted pursuant to Congress's powers under the [Fourteenth Amendment] and thus *does not implicate the same concerns.*

*Id.* at 303–04 (emphasis added).

In response, Landor insists that because RLUIPA's and RFRA's texts are almost the same, we should read RLUIPA the same way the Supreme Court read RFRA. After all, the two laws are often treated similarly. *See e.g., Burwell v. Hobby Lobby*, 573 U.S. 682, 696 n.5 (2014). But "[i]n law as in life, . . . the same words, placed in different contexts, sometimes mean different things." *Yates v. United States*, 574 U.S. 528, 537 (2015). The Supreme Court has often held "that identical language may convey varying content when used in different statutes, [and] sometimes even in different provisions of the same statute." *Id.* (collecting cases). Where "the scope of the legislative power exercised in one case is broader than that exercised in another, the meaning [of identical words] well may vary to meet the purposes of the law . . . and of the circumstances under which the language was employed." *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932) (citations omitted). That's the case here. Section 5 of the Fourteenth Amendment and the Spending Clause do not empower Congress to the same degree, and *Tanzin* does nothing to fill that gap.

In sum, we concluded in *Sossamon I* that although RLUIPA's text suggests a damages remedy, recognizing as much would run afoul of the Spending Clause. *Tanzin* doesn't change that—it addresses a different law that was enacted under a separate Congressional power with "concerns not relevant to [RLUIPA]." *Tanvir v. Tanzin*, 894 F.3d 449, 467 n.12 (2d Cir. 2018), *aff'd*, 141 S. Ct. 486 (2020). Because *Sossamon I* remains the law, Landor cannot recover monetary damages against the defendant-officials in their individual capacities under RLUIPA.

## B.

Landor raises one final argument. He contends that our Spending Clause analysis in *Sossamon I* was flawed from the outset. Landor suggests that, per *Sabri v. United States*, 541 U.S. 600 (2004), "Congress has the power under the Spending Clause . . . to impose liability on officials who work" for a recipient of federal funds. But Landor's reading of *Sabri* is flawed.

In *Sabri*, a real estate developer tried to bribe a Minneapolis official to get preferential treatment in his dealings with the municipality. *Id.* at 602. When Sabri was caught, he was charged under 18 U.S.C. § 666(a)(2), or "Theft or bribery concerning receiving federal funds." *Id.* On appeal, the Supreme Court found § 666(a)(2) to be a valid exercise of Congressional authority under the Spending Clause. *Id.* at 608. Now, Landor contends that Sabri's conviction is proof positive that Congress can "bring federal power to bear directly on individuals," namely third parties who aren't privy to a funding agreement, under the spending power. But that's an oversimplistic, expansive reading.

Sure, *Sabri* recognized that Congress has the "prerogative to protect spending objects" by targeting individuals who aren't a party to the contract.

*Id.* at 608. That decision rested on a common-sense extension of the spending power—Congress can safeguard its allocated dollars from bribery, embezzlement, and "local administrators on the take." *Id.* Criminal punishments are simply a "rational means" for securing the valid use of federal funds. *Id.* at 605. From that it doesn't necessarily follow that Congress has the power to hold third-party, non-recipients (*e.g.*, employees) responsible for violating RLUIPA. As the Court said itself, Congress may impose criminal liability on those "who convert public spending into unearned private gain." *Id.* at 608. Landor's situation, both legally and factually, simply isn't comparable. *Sabri* involved criminal liability for a person who directly threatened the "object" of a spending agreement, namely federal dollars, while Landor is a civil case that's based on conduct unrelated to the federal purse. The Third Circuit similarly recognized the limits of *Sabri* in an RLUIPA case.

> Sharp's reliance on [*Sabri*] for the proposition that Congress may regulate the actions of third parties under the Spending Clause, is misplaced. In *Sabri*, Congress enacted the statute at issue, 18 U.S.C. § 666(a)(2), pursuant to its powers under the Spending and the Necessary and Proper Clauses to protect its expenditures against local bribery and corruption. Here, however, Congress did not enact RLUIPA to protect its own expenditures, but rather it enacted RLUIPA to protect the religious rights of institutionalized persons. Thus, *Sabri* is inapposite.

*Sharp v. Johnson*, 669 F.3d 144, 155 n.15 (3d Cir. 2012) (citation omitted).

The Ninth Circuit, too, has employed likeminded reasoning. In *Wood v. Yordy*, the plaintiff argued that *Sabri* "means defendants in a civil damage

action under RLUIPA need not be recipients of federal funds." 753 F.3d at 903. The Ninth Circuit—emphasizing the need to monitor monetary disbursements under the spending power—found that wasn't "a sensible conclusion." *Id.* In sum, as the Sixth Circuit found, "RLUIPA is nothing like the *Sabri* statute." *Haight*, 763 F.3d at 570. We agree.

## III.

We *emphatically* condemn the treatment that Landor endured. Still, we remain bound by our prior decision in *Sossamon I* that, under RLUIPA, he cannot seek money damages from officials in their individual capacities. *In re Bonvillian*, 19 F.4th at 792 (the rule of orderliness). Because the district court correctly held so, we AFFIRM.