No. 22-30686

_____

# United States Court of Appeals for the Fifth Circuit

DAMON LANDOR,

Plaintiff-Appellant,

v.

LOUISIANA DEPARTMENT OF CORRECTIONS AND PUBLIC SAFETY, ET AL.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:21-00733
Hon. Shelly D. Dick

**BRIEF OF PROFESSOR DOUGLAS LAYCOCK
AS AMICUS CURIAE IN SUPPORT OF THE PETITION
FOR REHEARING EN BANC**

JOSHUA C. MCDANIEL
  *Counsel of Record*
PARKER W. KNIGHT III
HARVARD LAW SCHOOL
  RELIGIOUS FREEDOM CLINIC
6 Everett Street, Suite 5110
Cambridge, MA 02138
(617) 496-4383
jmcdaniel@law.harvard.edu

*Counsel for Amicus Curiae*

# CERTIFICATE OF INTERESTED PERSONS

No. 22-30686, *Damon Landor v. Louisiana Department of Corrections and Public Safety*:

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiff-Appellant:**

Damon Landor

**Counsel for Plaintiff-Appellant:**

Zachary D. Tripp and Shai Berman
Weil, Gotshal & Manges LLP

Casey Denson
Casey Denson Law LLP

**Defendants-Appellees:**

Louisiana Department of Public Safety and Corrections
James M. LeBlanc
Marcus Myers
Raymond Laborde Correctional Center

**Counsel for Defendants-Appellees:**

Phyllis Esther Glazer and LaKeisha A. Ford

Louisiana Department of Justice, Office of Attorney General

**Amicus Curiae:**

Douglas Laycock

**Counsel for Amicus Curiae:**

Joshua C. McDaniel, Parker W. Knight III
Harvard Law School Religious Freedom Clinic

/s/ *Joshua C. McDaniel*
Joshua C. McDaniel
   *Counsel of Record*
Parker W. Knight III
Harvard Law School
  Religious Freedom Clinic
6 Everett Street, Suite 5110
Cambridge, MA 02138
(617) 496-4383
jmcdaniel@law.harvard.edu

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS..........................................i

TABLE OF AUTHORITIES.....................................................iv

INTRODUCTION ............................................................. 1

INTEREST OF AMICUS CURIAE............................................. 3

ARGUMENT ................................................................ 4

    I.  The panel opinion misreads RLUIPA and puts this Circuit at further odds with the Supreme Court's *Tanzin* decision. ............ 4

        A.  RLUIPA's text, like RFRA's identical text, provides a damages remedy. ..................................................... 4

        B.  Historical context confirms that damages are "appropriate relief" under RLUIPA. ........................................... 7

        C.  *Tanzin* abrogated this Court's decision in *Sossamon I*. ......... 8

    II.  The panel's error is of exceptional public importance because it undermines RLUIPA's remedial aims and leaves many plaintiffs with no avenue for relief. ............................................ 11

CONCLUSION ............................................................ 14

CERTIFICATE OF COMPLIANCE ....................................... 16

CERTIFICATE OF SERVICE ............................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l,*
  570 U.S. 205 (2013) ............................................................ 10

*Bryant v. McGinnis,*
  463 F. Supp. 373 (W.D.N.Y. 1978)....................................... 8

*Campbell v. Thornton,*
  644 F. Supp. 103 (W.D. Mo. 1986) ...................................... 8

*Franklin v. Gwinnett Cnty. Pub. Schs.,*
  503 U.S. 60 (1992) ............................................................... 6

*Haight v. Thompson,*
  763 F.3d 554 (6th Cir. 2014) ............................................. 10

*Masjid Muhammad-D.C.C. v. Keve,*
  479 F. Supp. 1311 (D. Del. 1979) ........................................ 8

*New York v. United States,*
  505 U.S. 144 (1992) ........................................................... 10

*Njie v. Steele,*
  No. 22-1045, 2023 WL 119582 (7th Cir. Jan. 6, 2023)...................... 12

*Ravan v. Talto,*
  No. 22-11036, 2023 WL 2238853 (11th Cir. Feb. 27, 2023).............. 12

*Ross v. Blake,*
  578 U.S. 632 (2016) ........................................................... 13

*Russell v. Henderson,*
  475 F.2d 1138 (5th Cir. 1973) ........................................... 12

iv

*Smith v. City of Jackson*,
　544 U.S. 228 (2005) ................................................................. 4

*Smith v. Gipson*,
　No. 22-15069, 2023 WL 4421389 (9th Cir. July 10, 2023) ............... 12

*Sockwell v. Phelps*,
　20 F.3d 187 (5th Cir. 1994) .................................................... 8

*Sossamon v. Lone Star State of Texas*,
　560 F.3d 316 (5th Cir. 2009) ..................................... *passim*

*Sossamon v. Texas*,
　563 U.S. 277 (2011) ............................................................... 2

*Stovall v. Bennett*,
　471 F. Supp. 1286 (M.D. Ala. 1979).......................................... 8

*Tanzin v. Tanvir*,
　141 S. Ct. 486 (2020) .............................................. *passim*

*Vanscoy v. Hicks*,
　691 F. Supp. 1336 (M.D. Ala. 1988)........................................ 8

*Walker v. Baldwin*,
　74 F.4th 878 (7th Cir. 2023)............................................... 12

*Ware v. La. Dep't of Corr.*,
　866 F.3d 263 (5th Cir. 2017) .............................................. 14

**Statutes**

42 U.S.C. § 1997e(a) ............................................................. 13

42 U.S.C. § 2000bb-(2)(1) ...................................................... 4

42 U.S.C. § 2000bb-1(c) ......................................................... 4

42 U.S.C. § 2000cc-2(a) ................................................................. 4

42 U.S.C. § 2000cc-3(g) ............................................................... 9

42 U.S.C. § 2000cc-5(4)(A) ...................................................... 4, 5

**Other Authorities**

Douglas Laycock & Richard L. Hasen, *Modern American Remedies: Cases and Materials* (5th ed. 2019) .................................................... 3

Douglas Laycock, *Religious Liberty* (2018) (5 volumes) .......................... 3

H.R. Rep. No. 106-219 (1999) ................................................. 6, 9

Jake Horowitz & Tracy Velazquez, *Why Hasn't the Number of People in U.S. Jails Dropped?*, Pew Trusts (March 27, 2020) ......................... 12

*Religious Liberty Protection Act of 1999: Hearing on H.R. 1691 Before the Subcomm. on the Constitution of the H. Comm. on the Judiciary*, 106th Cong. 111 (1999) ...................................................... 6

U.S. Bureau of Justice Statistics, NCJ 255662, *Time Served in State Prison, 2018* (2021) ............................................................ 12

# INTRODUCTION

In passing RLUIPA, Congress ensured that prisoners could recover "appropriate relief" for state and local government officials' religious-freedom violations. The question before the Court is whether "appropriate relief" includes damages against officials in their individual capacities. The answer is the same as it is under RFRA's identical provision: it does. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020).

In *Tanzin*, the Supreme Court considered this question under RFRA. Looking at the statute's text from every angle, the Court held that RFRA clearly allows for individual-capacity damages. And every point the Supreme Court highlighted in favor of reading "appropriate relief" to permit damages against individual officers under RFRA applies with equal or greater force to RLUIPA. Reading the identical language in each statute to carry the same meaning is necessary to harmonize the statutes and bring this Circuit in line with *Tanzin*.

Without the benefit of *Tanzin*'s guidance, a panel of this Court construed RLUIPA narrowly to refuse any damages remedy—despite recognizing that "[t]he plain language of RLUIPA . . . seems to contemplate such relief." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 327 (5th

Cir. 2009), *aff'd on other grounds sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011) [hereinafter *Sossamon I* and *Sossamon II*, respectively]. That panel opinion overrode the statutory text to avoid concerns that allowing individual-capacity damages claims under RLUIPA might exceed Congress's powers under the Spending Clause. *Id.* at 328–29. But those concerns were misplaced. As several precedents confirm, it was well within Congress's powers to provide a damages remedy here.

The decision below doubles down on the prior panel's misreading of RLUIPA. As a result, this Circuit is at odds with *Tanzin*, which makes clear that "appropriate relief" can and does include damages against government officials. Only en banc rehearing can prevent that error from becoming cemented into Fifth Circuit law.

Ultimately, this case isn't just about whether claimants like Mr. Landor can recover damages. It's about whether they can receive any relief at all. Since the panel's erroneous interpretation of RLUIPA will deprive countless individuals of a remedy for even the most blatant religious-freedom violations, the question presented is exceptionally important. This Court should overrule *Sossamon I* en banc.

## INTEREST OF AMICUS CURIAE[1]

Professor Douglas Laycock is a leading expert on both remedies and religious liberty. He has authored influential volumes and dozens of law review articles in those fields. *See, e.g.*, Douglas Laycock, *Religious Liberty* (2018) (5 volumes); Douglas Laycock & Richard L. Hasen, *Modern American Remedies: Cases and Materials* (5th ed. 2019). He has appeared before the Supreme Court to argue some of the most important religious-freedom cases of the last few decades, testified before Congress on proposed religious-liberty legislation, and helped lead the effort to enact RLUIPA into law. He files this brief in his individual capacity as a scholar; neither the University of Virginia nor the University of Texas, the two schools with which he is affiliated, takes any position on the issues in this case.

---

[1] No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund preparing or submitting this brief, and no person other than amicus curiae or his counsel contributed money intended to fund preparing or submitting this brief.

# ARGUMENT

I.  **The panel opinion misreads RLUIPA and puts this Circuit at further odds with the Supreme Court's *Tanzin* decision.**

A.  **RLUIPA's text, like RFRA's identical text, provides a damages remedy.**

Congress passed RLUIPA to expand prisoners' access to remedies for state actions burdening their free exercise of religion. In appropriate cases, those remedies include individual-capacity damages. Indeed, in many cases, damages would be the only relief available.

The Court should start with the presumption that RLUIPA's remedial language carries the same meaning it does in RFRA. When, as here, "Congress uses the same language in two statutes having similar purposes," courts should "presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005). Just like RFRA, RLUIPA allows plaintiffs to seek all "appropriate relief" against the "government," including any state "official." 42 U.S.C. §§ 2000cc-2(a), 2000cc-5(4)(A); *see also* 42 U.S.C. §§ 2000bb-1(c), 2000bb-(2)(1). Because the statutes share that language, this Court should presume they share the same meaning.

As the Supreme Court has explained, that language is "clear." *Tanzin*, 141 S. Ct. at 490. Rather than limit claims against officials to their official capacities, Congress "supplanted the ordinary meaning of 'government'" by defining it to include officials *as persons*. *Id.* And it did so twice—reaching not only any state or local "official" but "any *other* person acting under color of State law." 42 U.S.C. § 2000cc-5(4)(A)(ii)–(iii) (emphasis added).

Were "appropriate relief" not to include individual-capacity damages, there would be little point in Congress deviating from the ordinary meaning of "government." That reading would leave plaintiffs with only injunctive or declaratory relief—relief they could have obtained against officials in their *official* capacities. The provisions departing from the ordinary meaning of "government" thus make sense only if RLUIPA permits individual-capacity damages claims.

The term "appropriate relief" confirms this reading. That term "is 'open-ended' on its face." *Tanzin*, 141 S. Ct. at 491. As *Tanzin* confirms, imposing individual-capacity damages is not only "appropriate," but in line with decades of civil-rights law. *See id.*

This interpretation of "appropriate relief" follows the presumption that all typical remedies are available unless Congress specifies something else. *Franklin v. Gwinnett Cnty. Pub. Schs.*, <u>503 U.S. 60, 66</u> (1992) (courts should "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise"). Nothing in RLUIPA's text suggests Congress wished to exclude damages.

To the contrary, RLUIPA's legislative history confirms the opposite. In the House Report for RLUIPA's unenacted predecessor, which had the same "appropriate relief" language, Congress explained that it sought to "track" RFRA by providing for damages. H.R. Rep. No. 106-219, at 29 (1999) ("This section provides remedies for violations. Sections 4(a) and (b) track RFRA, creating a private cause of action for damages, injunction, and declaratory judgment . . . ."). Because RLUIPA's remedies provision was "based on the corresponding provision of RFRA," it too provides for damages against government officials. *Religious Liberty Protection Act of 1999: Hearing on H.R. 1691 Before the Subcomm. on the Constitution of the H. Comm. on the Judiciary*, 106th Cong. 111 (1999) (statement of Douglas Laycock, Then-Professor, University of Texas Law School).

### B. Historical context confirms that damages are "appropriate relief" under RLUIPA.

In determining what "appropriate relief" includes, *Tanzin* looked not only to RFRA's text but to the broader "context of suits against Government officials." *Tanzin*, 141 S. Ct. at 491. Because "RFRA reinstated pre-*Smith* protections and rights," the Court explained, "parties suing under RFRA must have at least the same avenues for relief against officials that they would have had before *Smith*." *Id.* at 492 (discussing *Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872 (1990)).

Looking to that context, *Tanzin* noted that damages against government officials had "long been awarded as appropriate relief," both at common law in the early Republic and when statutes later displaced the common law. *Id.* at 491. Of particular importance here, damages were "also commonly available against state and local government officials," including for religious-freedom violations. *Id.* at 491–92 (citing cases allowing individual-capacity damages under § 1983).

Like RFRA, RLUIPA also reinstated (and strengthened) pre-*Smith* protections and rights in the zoning and prison contexts. Thus, the same logic that applied in *Tanzin* applies here: prisoners suing under RLUIPA

should have at least the same avenues for relief that pre-*Smith* free-exercise plaintiffs had.

Those avenues were broad. Under § 1983, prisoners have long sought damages, including damages against prison officials for violating their religious-freedom rights. *See, e.g.*, *Sockwell v. Phelps*, 20 F.3d 187, 192–93 (5th Cir. 1994); *Bryant v. McGinnis*, 463 F. Supp. 373, 388 (W.D.N.Y. 1978); *Vanscoy v. Hicks*, 691 F. Supp. 1336, 1337–38 (M.D. Ala. 1988); *Campbell v. Thornton*, 644 F. Supp. 103, 105 (W.D. Mo. 1986); *Stovall v. Bennett*, 471 F. Supp. 1286, 1292 (M.D. Ala. 1979); *Masjid Muhammad-D.C.C. v. Keve*, 479 F. Supp. 1311, 1327–28 (D. Del. 1979). Damages are thus a perfectly "appropriate" remedy under RLUIPA, just as they are under RFRA. *See Tanzin*, 141 S. Ct. at 492.

## C. *Tanzin* abrogated this Court's decision in *Sossamon I*.

Despite the weight of this textual and contextual evidence, the panel in this case reaffirmed that RLUIPA does not allow for damages claims. It determined that it was bound by *Sossamon I*, a case this Court decided before *Tanzin* clarified the meaning of "appropriate relief." Under *Tanzin*, however, that conclusion is untenable. This Court should revisit and overrule *Sossamon I* en banc for at least three reasons.

First, *Sossamon I* erred from the start by applying constitutional avoidance to RLUIPA. *See Sossamon I*, 560 F.3d at 329. Although that interpretive tool normally permits courts to choose between permissible readings of a statute "to avoid the constitutional concerns that an alternative reading would entail," *id.*, RLUIPA eliminated that choice. Instead, Congress flipped the presumption, directing courts to choose the reading that provides relief "to the maximum extent permitted by the . . . Constitution." 42 U.S.C. § 2000cc-3(g); *see also* H.R. Rep. No. 106-219, at 29 (1999) (RLUIPA's broad-construction provision "was designed to clarify the meaning of all [of RLUIPA's] other provisions"). *Sossamon I* did not address RLUIPA's broad-construction provision, and its avoidance analysis cannot be squared with it.

Second, *Tanzin* makes clear that *Sossamon I*'s interpretation of "appropriate relief" was mistaken. Indeed, because *Sossamon I* relied on the constitutional-avoidance canon, it sidestepped a proper analysis of the various textual and contextual cues that "provide[] a clear answer" here. *Tanzin*, 141 S. Ct. at 490. By continuing to rely on a pre-*Tanzin* understanding of "appropriate relief," this Court is now in conflict with the Supreme Court.

Third, *Sossamon I*'s belief that reading RLUIPA to allow individual-capacity damages might raise Spending Clause concerns was wrong. That Clause (bolstered by the Necessary and Proper Clause) gives Congress "broad discretion to . . . spend for the 'general Welfare'" and "impose limits on the use of such funds to ensure they are used in the manner Congress intends." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l*, 570 U.S. 205, 213 (2013); *see also New York v. United States*, 505 U.S. 144, 158 (1992) (noting that the Supreme Court has given the Spending Clause a "broad construction").

Looking to an out-of-circuit decision, *Sossamon I* reasoned that "only the grant recipient—the state—may be liable for . . . violation" of laws passed under the Spending Clause. *Sossamon I*, 560 F.3d at 328. But by the time *Sossamon I* was decided, the Supreme Court had made clear that this reading of the Spending Clause was wrong. The Spending Clause can "bring federal power to bear directly on individuals" who don't receive federal funds. *Sabri v. United States*, 541 U.S. 600, 608 (2004). Accordingly, at least one circuit has criticized *Sossamon I*'s reasoning as "prov[ing] too much." *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014).

*Sossamon I* was decided without *Tanzin*'s guidance, yet it has continued to lead other circuits to misinterpret RLUIPA. This case offers this Court the opportunity to correct *Sossamon I*'s erroneous interpretation and decisively rule on this important question.

## II. The panel's error is of exceptional public importance because it undermines RLUIPA's remedial aims and leaves many plaintiffs with no avenue for relief.

RLUIPA is the culmination of Congress's repeated efforts to ensure that states respect free-exercise rights. And providing a damages remedy was a critical part of Congress's goal. As *Tanzin* explained, a "damages remedy is not just 'appropriate' relief" but often "the *only* form of relief that can remedy" a religious claimant's harm. 141 S. Ct. at 492 (emphasis in original). Reading RLUIPA to withhold damages for violations of the Act would frustrate Congress's recurring efforts to protect religious freedom.

If damages were unavailable, many plaintiffs—particularly institutionalized persons—would be left with no relief at all. This case and *Sossamon I* itself present such instances, and examples from other circuits abound. *See Sossamon I*, 560 F.3d at 325–26 (dismissing claims for injunctive and declaratory relief as moot); *see also, e.g.*, *Walker v. Baldwin*,

74 F.4th 878, 880 (7th Cir. 2023); *Njie v. Steele*, No. 22-1045, 2023 WL 119582, at *2–3 (7th Cir. Jan. 6, 2023); *Smith v. Gipson*, No. 22-15069, 2023 WL 4421389, at *1 (9th Cir. July 10, 2023); *Ravan v. Talton*, No. 21-11036, 2023 WL 2238853, at *6 (11th Cir. Feb. 27, 2023).

Inmates often cannot vindicate their rights until the violation is long past. Many inmates spend a short time in the correctional system. Inmates released in 2018 had spent an average of only 2.7 years in prison and just 26 days in jail. U.S. Bureau of Justice Statistics, NCJ 255662, *Time Served in State Prison, 2018* at 1 (2021), https://perma.cc/E9R5-Y4B2; Jake Horowitz & Tracy Velazquez, *Why Hasn't the Number of People in U.S. Jails Dropped?*, Pew Trusts (March 27, 2020), https://perma.cc/922N-CBX5. Jailers transfer inmates due to overcrowding, to provide healthcare, for administrative reasons, and, not infrequently, for the very purpose of mooting their cases. Whatever the motive, transfers render any request for injunctive relief against an earlier prison moot. *See, e.g.*, *Russell v. Henderson*, 475 F.2d 1138, 1138 (5th Cir. 1973) (per curiam).

Procedural delays and practical matters exacerbate the problem. Before inmates can even sue, the Prison Litigation Reform Act requires

them to first exhaust all available prison grievance procedures, a process that can take months. 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 578 U.S. 632, 639 (2016).

Apart from those hurdles, prison officials can at any point during litigation seek to avoid liability by changing their policies or granting the plaintiff's requested accommodation. As a result, although plaintiffs like Mr. Landor are the very individuals RLUIPA sought to protect, they not only are denied access to monetary damages, but also often remain under threat of repeated violations of religious-freedom rights.

What's more, denying damages under RLUIPA though they are permitted under RFRA would result in arbitrary outcomes depending on *where* a prisoner is held: federal prisoners would have a damages remedy while state prisoners would not. Given the identical language used in both statutes and RLUIPA's intent to reapply RFRA's protection to state prisons, damages should be available under RLUIPA just as they are under RFRA. *See Tanzin*, 141 S. Ct. at 489.

In short, Congress passed RLUIPA for cases like this one. This Court recently recognized that RLUIPA forbids prisons from cutting the dreadlocks of devout Rastafarians. *Ware v. La. Dep't of Corr.*, 866 F.3d 263, 274

(5th Cir. 2017). But without individual-capacity damages, prison officials like Defendants are free to toss *Ware* aside, shave Mr. Landor bald, and face no consequences. *See* Pl. Opening Br. at 6–7. That is the opposite of "appropriate relief."

## CONCLUSION

The panel's holding leads to a reading of RLUIPA that ignores its context, history, and text. Since such a reading also frustrates Congress's clear and lawful exercise of its authority to guarantee prisoners protection of their most sacred rights, this case presents a question of exceptional importance. This Court should rehear the case en banc and overrule *Sossamon I*.[2]

Respectfully submitted,

/s/ *Joshua C. McDaniel*

---

[2] Amicus thanks Kenna Pierce, a student in the Harvard Law School Religious Freedom Clinic, for helping to prepare this brief.

JOSHUA C. MCDANIEL
   *Counsel of Record*
PARKER W. KNIGHT III
HARVARD LAW SCHOOL
   RELIGIOUS FREEDOM CLINIC
6 Everett Street, Suite 5110
Cambridge, MA 02138
(617) 496-4383
jmcdaniel@law.harvard.edu

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. 29(b)(4) because it contains 2,585 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a) because it has been prepared in a proportionally spaced, 14-point Century Schoolbook font.

Dated: October 19, 2023

/s/ *Joshua C. McDaniel*
Joshua C. McDaniel

## CERTIFICATE OF SERVICE

I certify that on October 19, 2023, I served this document on all parties or their counsel of record via CM/ECF.

Dated: October 19, 2023

/s/ *Joshua C. McDaniel*
Joshua C. McDaniel