# United States Court of Appeals
# for the Fifth Circuit

---

No. 22-30686

---

Damon Landor,

                    *Plaintiff—Appellant*,

*versus*

Louisiana Department of Corrections and Public Safety; James M. LeBlanc, *in his official capacity as Secretary thereof, and individually*; Raymond Laborde Correctional Center; Marcus Myers, *in his official capacity as Warden thereof, and individually*; John Does 1-10; ABC Entities 1-10,

                    *Defendants—Appellees*.

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-733

---

ON PETITION FOR REHEARING EN BANC

Before Clement, Graves, and Higginson, *Circuit Judges*.

Per Curiam:

  Treating the petition for rehearing en banc as a petition for panel rehearing (5th Cir. R. 35 I.O.P.), the petition for panel rehearing is DENIED.  The petition for rehearing en banc is DENIED because, at the

No. 22-30686

request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fed. R. App. P. 35 and 5th Cir. R. 35).

In the en banc poll, six judges voted in favor of rehearing (Smith, Elrod, Willett, Ho, Duncan, and Oldham), and eleven voted against rehearing (Richman, Jones, Stewart, Southwick, Haynes, Graves, Higginson, Engelhardt, Wilson, Douglas, and Ramirez).

No. 22-30686

Edith Brown Clement, *Circuit Judge*, joined by Jones, Stewart, Graves, Higginson, Engelhardt, Wilson, Douglas, and Ramirez, *Circuit Judges*, concurring in the denial of rehearing en banc.

Officials at the Raymond Laborde Correctional Center knowingly violated Damon Landor's rights in a stark and egregious manner, literally throwing in the trash our opinion holding that Louisiana's policy of cutting Rastafarians' hair violated the Religious Land Use and Institutionalized Persons Act before pinning Landor down and shaving his head. Landor clearly suffered a grave legal wrong. The question is whether a damages remedy is available to him under RLUIPA. That is a question only the Supreme Court can answer.

* * *

In determining whether RLUIPA permits Landor to recover money damages against state government officials in their individual capacities, the panel was bound to follow *Sossamon v. Lone Star State of Texas*, which answered that question in the negative. 560 F.3d 316, 328–29 (5th Cir. 2009) (*Sossamon I*). The en banc court, of course, would have been free to overrule that opinion.[1] But overruling *Sossamon I* was only a necessary, not sufficient, condition for affording Landor a cause of action.

---

[1] Although doing so would have required us to determine that the Spending Clause permits Congress to impose liability on the non-recipients of federal funds, not just the recipients (*i.e.*, the states) themselves when the Supreme Court—which often analyzes Spending Clause legislation using a contract law analogy—has never stretched the analogy that far. *See Barnes v. Gorman*, 536 U.S. 181, 187 (2002) (holding that a *direct recipient* of federal funds may be held liable for intentional conduct that violates the clear terms of a Spending Clause statute); *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219 (2022) ("[W]e employ the contract analogy only as a potential limitation on liability compared to that which would exist under nonspending statutes." (internal quotation marks, citation, and emphasis omitted)).

No. 22-30686

Had we overruled *Sossamon I* en banc, we would have then needed to address the question that *Sossamon I* declined to answer—is RLUIPA's "appropriate relief" language sufficiently clear to put the state and/or its employees on notice that the employees can personally be held liable for monetary damages? There, we would have run into the Supreme Court's decision in *Sossamon II,* which held that, at least in the context of state employees sued in their *official* capacities, RLUIPA did *not* clearly allow for monetary damages. *Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011). To be sure, the Supreme Court has now made clear that, at least in the RFRA context, "appropriate relief" includes monetary damages against federal officials in their individual capacities. *Tanzin v. Tanvir*, 592 U.S. 43, 45 (2020). But threading the needle between *Sossamon II* and *Tanzin* is a task best reserved for the court that wrote those opinions. *Cf. Lefebure v. D'Aquilla*, 15 F.4th 650, 660 (5th Cir. 2021) ("[T]he only court that can overturn a Supreme Court precedent is the Supreme Court itself.").

No. 22-30686

Andrew S. Oldham, *Circuit Judge*, joined by Smith, Elrod, Willett, Ho[*], and Duncan, *Circuit Judges*, dissenting from the denial of rehearing en banc:

This case concerns remedies against state prison officials who intentionally ignore federal protections for the free exercise of religion. In *Ware v. Louisiana Department of Corrections*, 866 F.3d 263 (5th Cir. 2017), we held the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") prevented Louisiana from forcing Rastafarians to cut their dreadlocks. Damon Landor, a faithful Rastafarian, handed a copy of our *Ware* decision to Louisiana state prison officials—who threw the opinion in the trash and forcibly shaved Landor's head. An injunction obviously would not help the then-bald Landor. So he sued his abusers for money damages under RLUIPA. Inexplicably, he lost. And doubly inexplicably, our en banc court cannot be moved to rehear the case.

The panel held RLUIPA does not allow prisoners to sue state prison officials in their individual capacities for money damages. With all due respect to my esteemed and learned colleagues, that result cannot be squared with *Tanzin v. Tanvir*, 592 U.S. 43 (2020). *Tanzin* held that individuals can sue for money damages under the Religious Freedom Restoration Act of 1993 ("RFRA"). The operative provisions of RFRA and RLUIPA are *in haec verba*, and both the Supreme Court and ours routinely interpret the statutes in parallel. Today, unfortunately for Landor, our court pits the statutes against one another. I respectfully dissent.

I.

Damon Landor is a faithful Rastafarian. In adherence to his religious beliefs, he abides by the Nazarite Vow (the biblical oath also taken by Samson

---

[*] Judge Ho concurs only in Parts I and II of this opinion.

in the book of Judges). A man who takes the Nazarite Vow must abstain from wine and other alcohol. *See Numbers* 6:2–4. He must also not cut his hair. *See Numbers* 6:5. Landor did not cut his hair for almost two decades. At its longest, Landor's locks fell nearly to his knees.

Beginning in August 2020, Landor was incarcerated for five months in three different Louisiana state prisons. State officials at the first two prisons accommodated Landor's religious beliefs, allowing him to wear a rastacap over his long hair.

But on December 28, 2020, three weeks before his ultimate release from prison, Landor was transferred to Raymond Laborde Correctional Center ("RLCC"). Landor informed the intake guard that he was a practicing Rastafarian and presented the guard with various legal materials regarding his religious accommodations. Of note, Landor included in his materials a copy of our RLUIPA decision in *Ware*.

The intake guard threw Landor's materials, including the *Ware* decision, in the trash. The guard then summoned the RLCC warden, who asked Landor if he had documentation about his religious beliefs from his sentencing judge. Landor lacked that specific documentation but offered to contact his lawyer to obtain those materials. In response, the warden glibly quipped that it was "[t]oo late for that." The warden instructed prison guards to escort Landor to another room, where Landor was forcibly handcuffed to a chair. As two guards held Landor down, another individual shaved his head to the scalp.

Upon release from prison, Landor sued several defendants, including the Louisiana Department of Public Safety and Corrections, the Department's Secretary, RLCC, and the RLCC warden. As relevant to this appeal, Landor brought claims under RLUIPA for money damages against several Louisiana state officials in their individual capacities. The district

court rejected his RLUIPA claims for money damages at the motion to dismiss stage, *Landor v. La. Dep't of Corrs. & Pub. Safety*, 2022 WL 4593085, at *2 (M.D. La. Sept. 29, 2022), and a panel of this court affirmed that decision, *Landor v. La. Dep't of Corrs. & Pub. Safety*, 82 F.4th 337 (5th Cir. 2023).

II.

No one can reasonably debate that the prison officials violated Landor's rights under RLUIPA. We so held in *Ware*, and no one has suggested we should revisit that decision. The only divide is over the scope of remedies. In my view, (A) RLUIPA provides a cause of action for money damages against state officials in their individual capacities. And (B) the panel's contrary arguments are unpersuasive.

A.

RLUIPA authorizes a person to "assert a violation of this chapter as a claim . . . in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). A "violation of this chapter" refers to RLUIPA's prohibition against the government's imposition of a substantial burden on "the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the burden is the least restrictive means of furthering a compelling state interest. *See ibid.*; *see also id.* § 1997(1) (defining institution to include jails, prisons, pretrial detention facilities, and government nursing homes). RLUIPA itself defines the term "government" to include state officials. *See id.* § 2000cc-5(4)(A)(ii).

As for obtaining "appropriate relief against a government," the Supreme Court recently clarified the meaning of that phrase. In *Tanzin*, the Court interpreted the exact same phrase as it appears in RFRA. *See* 42 U.S.C. § 2000bb-1(c). The *Tanzin* Court held 8–0 that "appropriate relief against a

government" includes damages actions against government officials in their individual capacities. 592 U.S. at 52.

The Supreme Court's interpretation of RFRA in *Tanzin* should be dispositive of our interpretation of RLUIPA in this case. Over and over again, the Court has called RLUIPA and RFRA "sister" or "twin" statutes. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 730 (2014) ("sister"); *Holt v. Hobbs*, 574 U.S. 352, 356 (2015) ("sister"); *Ramirez v. Collier*, 595 U.S. 411, 424 (2022) ("sister"); *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2396 n.13 (2020) (Alito, J., joined by Gorsuch, J., concurring) ("twin"). And the Court has repeatedly interpreted one statute by looking to its precedent interpreting the other. *See Hobby Lobby*, 573 U.S. at 718, 730 (looking to RLUIPA to interpret RFRA); *Holt*, 574 U.S. at 362–63, 364 (looking to RFRA precedents to interpret RLUIPA); *Ramirez*, 595 U.S. at 425, 427 (looking to RFRA precedents to interpret RLUIPA); *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006) (looking to RLUIPA's application to predict RFRA's); *Sossamon v. Texas ("Sossamon II")*, 563 U.S. 277, 286 n.5, 289 n.6 (2011) (weighing the lower courts' interpretation of a parallel RFRA phrase to assess notice of monetary liability in an RLUIPA case).

In short, not only is the relevant text in RLUIPA identical to that in RFRA, but Supreme Court precedent also commands us to interpret the two statutes in tandem. Given *Tanzin*, RLUIPA (like RFRA) authorizes damages suits against state officials.

B.

Against this straightforward application of Supreme Court precedent, the panel offered three counterarguments: (1) RLUIPA and RFRA are different statutes with different constitutional justifications;

No. 22-30686

(2) constitutional avoidance; and (3) precedent from our sister circuits. All three are unpersuasive.

1.

First, the panel distinguished *Tanzin* by pointing to the different constitutional justifications for RLUIPA and RFRA. *See Landor*, 82 F.4th at 342–43 ("[A]fter all, [*Sossamon v. Lone Star State of Texas ("Sossamon I")*, 560 F.3d 316 (5th Cir. 2009),] and *Tanzin* involve *different laws*."). RFRA applies to the federal government pursuant to Congress's various enumerated powers,[1] whereas RLUIPA applies to the States under Congress's Spending and Commerce powers. The panel then focused on the Spending Clause. "Spending Clause legislation 'operates like a contract,' so 'only the grant recipient—the state—may be liable for its violation.'" *Landor*, 82 F.4th at 341 (quoting *Sossamon I*, 560 F.3d at 328). Thus, the panel held, RLUIPA cannot be used to hold non-grant-recipient state officials personally liable for free-exercise violations.

This is incorrect for two reasons. First, it is true that Spending Clause legislation is in a sense contractual: Congress agrees to pay if the recipient performs. But it is not true that the Spending Clause prohibits regulating

---

[1] The Supreme Court has never been clear about the justification for RFRA as applied to the federal government. But Michael Stokes Paulsen provides this explanation:

> Congress possesses the same power to pass RFRA, as RFRA concerns federal statutes, as it had to pass those other federal statutes in the first place. If Congress had power to pass a statute to begin with, Congress has power to modify it by enacting RFRA . . . . RFRA operates as a sweeping "super-statute," cutting across all other federal statutes (now and future, unless specifically exempted) and modifying their reach. RFRA qualifies Congress' regulations of commerce, of defense, of the post office, of immigration, of bankruptcy, of federal lands, and so on.

Michael Stokes Paulsen, *A RFRA Runs Through It: Religious Freedom and the U.S. Code*, 56 Mont. L. Rev. 249, 253 (1995) (internal citations omitted).

anyone beyond the recipient. That is presumably why the panel recognized that Congress *can* regulate "individuals who aren't party to the contract." *Landor*, 82 F.4th at 344 (citing *Sabri v. United States*, 541 U.S. 600, 608 (2004)). Otherwise, how could Congress have required the States receiving federal highway funds to pass criminal laws regulating the behavior of underage individuals? *See South Dakota v. Dole*, 483 U.S. 203 (1987). South Dakotan 19-year-olds weren't parties to the Spending Clause contract in *Dole*. *See* 23 U.S.C. § 158 (1982 ed., Supp. III). If South Dakota can agree to criminalize the behavior of its 19-year-old bourbon enthusiasts, it's unclear why Louisiana cannot agree to make its prison officials liable for forcibly shaving Damon Landor's head.[2]

Second, as best outlined in *Dole*, Congress's spending power is subject to four general restrictions: Spending Clause legislation must (1) be in pursuit of the general welfare, (2) impose unambiguous conditions on the grant of federal money, which (3) are related to the federal interest in particular national projects or programs, and (4) do not violate other provisions of the Constitution. *See Dole*, 483 U.S. at 207–08. RLUIPA's provision for individual official liability complies with these restrictions.

Courts generally defer to Congress on whether (1) a "particular expenditure is intended to serve general public purposes." *Id.* at 207 (citation omitted). RLUIPA was broadly intended to protect prisoners' religious exercise rights. *See Cutter v. Wilkinson*, 544 U.S. 709, 716–17 (2005). And it cannot be seriously disputed that making individual officials liable for

---

[2] Nor would this provision of RLUIPA be unique in submitting such individuals to liability. For example, the Emergency Medical Treatment and Active Labor Act of 1986 regulates activities in hospitals that accept federal funds. Doctors in those hospitals who violate certain provisions related to patient treatment are subject to a civil penalty of not more than $50,000, even though they did not agree to the Spending Clause "contract." *See* 42 U.S.C. § 1395dd(d)(1)(B).

violating religious exercise rights serves the same general public purpose. With respect to (2) unambiguous conditions, the States had "clear notice" of this Spending Clause condition. *Cf. Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295–96 (2006). Note that this is not a case where the "statutes at issue are silent to available remedies." *Cf. Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 220 (2022). The remedies are discussed in RLUIPA's text, which (again) is materially identical to RFRA's. As applied to suits against individual officials and as understood by an ordinary person at the time of RFRA's enactment, the remedy of "appropriate relief" plainly encompassed money damages, as the Supreme Court unanimously held. *See Tanzin*, 592 U.S. at 50–52. The condition of personal liability is (3) reasonably related to the purpose of the expenditure. *Cf. New York v. United States*, 505 U.S. 144, 172 (1992). If RLUIPA aims to protect free exercise in prison, then monetary liability for state officials should deter government misconduct and protect religious exercise.[3] Finally, RLUIPA's provision for state official liability does not (4) violate other provisions of the Constitution. The provision is not unduly coercive, nor is it the kind of "economic dragooning that leaves the States with no real option but to acquiesce." *See NFIB v. Sebelius*, 567 U.S. 519, 582 (2012). Thus, as a condition on Spending Clause legislation, this provision of RLUIPA is constitutional.

---

[3] As multiple amici discuss, money damages are often necessary to vindicate rights under RLUIPA. Money damages "raise the price of unlawful conduct and make it less attractive to potential wrongdoers," *see* Brief of Amici Curiae 19 Religious Organizations in Support of Appellant's Petition for Rehearing En Banc at 6, and are particularly important where prisons can moot claims for injunctive or declaratory relief through release or transfer. *See* Brief of Amici Curiae Bruderhof, Clear, the Jewish Coalition for Religious Liberty, and the Sikh Coalition in Support of Appellant's Petition for Rehearing En Banc at 4–6.

No. 22-30686

The import of *Tanzin* in this case is undeniable. And RLUIPA's authorization under the Spending Clause does nothing to change that.

2.

But what about constitutional avoidance? In *Sossamon I*, the panel chose a narrow reading of RLUIPA's remedial provision to "avoid the constitutional concerns that an alternative reading would entail." 560 F.3d at 329.

Whatever its merits back in 2009, that choice is now foreclosed. *Tanzin* unanimously held that "appropriate relief against a government" includes money damages against individual officials. *See* 592 U.S. at 50–52. This interpretation of RFRA was supported by the text, *see id.* at 48–49, the historical context, *see id.* at 49–50, and policy reasons, *see id.* at 51. *Tanzin* thus compels us to reject the argument that the relevant portion of RLUIPA (a "sister" or "twin" statute to RFRA) is ambiguous. And while constitutional avoidance is a powerful substantive canon, *see, e.g.*, *Bond v. United States*, 572 U.S. 844 (2014), it cannot be invoked where there is no ambiguity. This is especially true where, as shown above, there are no constitutional concerns with the correct reading of RLUIPA.

3.

But what about the reasoning of our sister circuits? The panel noted that the approach in *Sossamon I* was consistent with other circuits' decisions. *See Landor*, 82 F.4th at 343 n.5 (listing authorities). But again, I am not sure that works after *Tanzin*.

Few of these decisions applied the *Dole* four-part framework, relying instead on constitutional avoidance (off the table after *Tanzin*), *see, e.g.*, *Washington v. Gonyea*, 731 F.3d 143, 146 (2d Cir. 2013); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009), or holding (incorrectly) that Congress cannot

use the Spending Power to regulate individuals who were not party to the imagined contract, *see, e.g.*, *Wood v. Yordy*, 753 F.3d 899, 903–04 (9th Cir. 2014); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012). The circuits that actually analyzed this RLUIPA provision under *Dole* held that there was insufficiently clear notice of the condition. *See Haight v. Thompson*, 763 F.3d 554, 568–70 (6th Cir. 2014); *Rendelman v. Rouse*, 569 F.3d 182, 188–89 (4th Cir. 2009). But those decisions came before *Tanzin*, which obviates any argument about clear notice and the phrase "appropriate relief against a government." All of this is to say that no circuit has squarely considered the impact of *Tanzin* within a comprehensive analysis of the Spending Clause and *Dole*.

\*     \*     \*

Last term, the Supreme Court decided a case about § 1983 and Spending Clause legislation. *See Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023). The petitioners urged the Court to adopt a kind of Spending Clause exceptionalism and to carve out statutes passed under that Clause for disfavored treatment under § 1983. *See id.* at 177–78. The Court rejected that argument, *see id.* at 178–80, choosing instead to follow the traditional principles announced in *Gonzaga v. Doe*, 536 U.S. 273 (2002). *See Talevski*, 599 U.S. at 180–92.

Here too, the panel and the state officers advocate a kind of Spending Clause exceptionalism. No matter that *Tanzin* interpreted the exact same phrase in RFRA, the reasoning goes, because RLUIPA is a Spending Clause statute, and Spending Clause statutes are somehow second-class laws. Moreover, the thinking appears to be, we need not do the work required by *Dole* because our sister circuits haven't. And because if we're wrong, the Supreme Court can tell us.

No. 22-30686

It is certainly true that the Supreme Court could fix the mistake we made today. But the Court could also fix every mistake we attempt to fix under Federal Rule of Appellate Procedure 35. We have the en banc process to fix errors like the one we made in *Sossamon I*. I regret we chose not to do so.

James C. Ho, *Circuit Judge*, joined by Elrod, *Circuit Judge*, dissenting from denial of rehearing en banc:

Like the Religious Freedom Restoration Act, the Religious Land Use and Institutionalized Persons Act of 2000 authorizes courts to grant "appropriate relief against a government." 42 U.S.C. § 2000cc–2(a). *See also* 42 U.S.C. § 2000bb–1(c) (same).

Does "appropriate relief" mean that a person can sue under RLUIPA for money damages against government officials? Before we can answer this question, there are two Supreme Court precedents we must consider.

In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that "appropriate relief" does not include actions for money damages under RLUIPA—at least when it comes to suits against a *State*.

But the Court's analysis made clear that that's only because States enjoy sovereign immunity.

As *Sossamon* explained, "RLUIPA's authorization of 'appropriate relief against a government' is not the unequivocal expression of state consent that our precedents require. 'Appropriate relief' does not so clearly and unambiguously waive sovereign immunity to private suits for damages that we can be certain that the State in fact consents to such a suit." *Id.* at 285–86 (cleaned up). "The requirement of a clear statement in the text of the statute ensures that Congress has specifically considered state sovereign immunity and has intentionally legislated on the matter. Without such a clear statement from Congress and notice to the States, federal courts may not step in and abrogate state sovereign immunity." *Id.* at 290–91 (citation omitted).

Individuals, by contrast, do not enjoy sovereign immunity. So *Sossamon* should have no bearing on suits against individual officers in their individual capacities.

Indeed, that's precisely what the Court held in *Tanzin v. Tanvir*, 592 U.S. 43 (2020). In *Tanzin*, the Court concluded that "appropriate relief against a government" includes actions for money damages under RFRA against government officials in their individual capacities. *See id.* at 45 ("The Religious Freedom Restoration Act of 1993 (RFRA) . . . gives a person whose religious exercise has been unlawfully burdened the right to seek 'appropriate relief.' The question here is whether 'appropriate relief' includes claims for money damages against Government officials in their individual capacities. We hold that it does."); *see also id.* at 52 ("RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities.").

In reaching this conclusion, the Court expressly distinguished *Sossamon*. It held that *Sossamon* does not apply to suits against individuals, because unlike States, individuals "do not enjoy sovereign immunity." *Id.* at 52. As *Tanzin* explained, "*Sossamon* held that a State's acceptance of federal funding did not waive sovereign immunity to suits for damages under [RLUIPA] which also permits 'appropriate relief.' *The obvious difference is that this case features a suit against individuals, who do not enjoy sovereign immunity.*" *Id.* at 51–52 (citation omitted, emphasis added).

Accordingly, I agree with Judge Oldham's typically thoughtful dissent that we should've reheard this case en banc.